## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EMBASSY OF THE FEDERAL REPUBLIC OF NIGERIA, | ) ) ) | |
| | ) | Civil Action No. 1:10-cv-01929 (HHK) |
| Plaintiff, | ) | |
| vs. | ) | PLAINTIFF DEMANDS A |
| | ) | TRIAL BY JURY |
| EPHRAIM EMEKA UGWUONYE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Embassy of the Federal Republic of Nigeria ("Embassy"), through its Ambassador Adebowale Ibidapo Adefuye, and by its undersigned attorney, alleges the following for its complaint:

### NATURE OF ACTION

1.      Ephraim Emeka Ugwuonye ("Ugwuonye") and Bruce E. Fein ("Fein") are attorneys and partners at the firm ECU Associates, P.C. and/or ECU Law Group (hereinafter "ECU Associates").  Ugwuonye, both individually and on behalf of the other Defendants, represented the Embassy in several real estate transactions.  In one of the transactions, the Internal Revenue Service ("IRS") withheld $1.55 million in property taxes.  Ugwuonye obtained a full refund from the IRS in November 2007, deposited the funds in an ECU Associates account, withdrew $550,000 for unexplained purposes, and then subsequently promised to deliver the funds to the Embassy "promptly upon [the IRS refund check's] clearance," misrepresenting that the funds were not yet available for withdrawal.  The Defendants subsequently refused to deliver the money to the Embassy.  None of the Defendants claimed that the Embassy failed to pay for their services.  Rather, they unilaterally decided to keep the funds and claimed that they were owed money for other services that allegedly were rendered to the Government of the Federal Republic of Nigeria ("GON") in matters unrelated to the Embassy's real estate transactions.  The Embassy disputed the

misappropriation of the funds and requested information concerning the services the Defendants allegedly performed for the GON. The Defendants refused to provide the requested information, in violation of their professional and ethical duties as attorneys. They also continue to withhold the tax refund from the Embassy, necessitating this action.

## PARTIES

2.      The Embassy is the permanent diplomatic mission from and represents Nigeria in the United States. The Embassy's place of business is located at 3519 International Court, NW, Washington, DC 20008.

3.      Ugwuonye practices law in the District of Columbia, Maryland, New York, Illinois and other jurisdictions. He is admitted to the Bars of the District of Columbia, Maryland, and New York. He is currently suspended from practicing law in the District of Columbia and New York. His business addresses include 850 Sligo Avenue, Suite 400, Silver Spring, MD 20910-4703. Ugwuonye's current or recent business addresses also include Chevy Chase Pavilion, 5335 Wisconsin Avenue, NW, Suite 720, Washington, DC 20015. On information and belief, Ugwuonye resides in Maryland.

4.      Bruce E. Fein ("Fein") practices law in the District of Columbia, Maryland, New York, Illinois and other jurisdictions. He is admitted to the Bar of the District of Columbia. His business addresses include 850 Sligo Avenue, Suite 400, Silver Spring, MD 20910-4703. Fein's current or recent business addresses also include Chevy Chase Pavilion, 5335 Wisconsin Avenue, NW, Suite 720, Washington, DC 20015; 910 17th Street, NW, Suite 800, Washington, DC 20006; and 1025 Connecticut Ave., NW, Suite 216, Washington, DC 20036-5425.

5.      ECU Law Group is a law partnership. *See* Md. Code § 9A-202 (2010); D.C. Code § 33-102.02 (2011). ECU Law Group practices law in Maryland, the District of Columbia, New York, Illinois, and possibly other jurisdictions. ECU Law Group's business addresses include 850

Sligo Avenue, Suite 400, Silver Spring, MD 20910-4703.  ECU Law Group's current or recent business addresses also include Chevy Chase Pavilion, 5335 Wisconsin Avenue, NW, Suite 720, Washington, DC 20015.

6.      ECU Associates, P.C. (a/k/a ECU & Associates, P.C.) is a Maryland professional corporation.  Md. Code § 5-101(f) (2010).  ECU Associates practices law in Maryland, the District of Columbia, New York, Illinois, and possibly other jurisdictions.  Its business addresses include 850 Sligo Avenue, Suite 400, Silver Spring, MD 20910-4703.  ECU Associates' current or recent business addresses also include Chevy Chase Pavilion, 5335 Wisconsin Avenue, NW, Suite 720, Washington, DC 20015.

7.      Defendants Ugwuonye and Fein are or were partners in the law firms ECU Law Group and ECU Associates, which the Defendants referred to interchangeably.[1]  Before this action was filed, Ugwuonye and Fein advertised their affiliation with ECU Associates on the Internet at http://www.eculaw.com (last visited on December 2, 2010) and represented to the public that Ugwuonye and Fein were partners in the same law firm.  After the Embassy filed this lawsuit, the ECU Associates website was removed from the Internet.

## JURISDICTION AND VENUE

8.      Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332(a)(4) (2006) in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between a foreign state as Plaintiff and citizens of different states.

9.      The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* (2006).

---

[1] As the Defendants referred to ECU Law Group and ECU Associates interchangeably, any reference herein to one entity is intended to refer to both entities.

10.     Venue is proper in this district under 28 U.S.C. § 1391(a) (2006), in that this is a diversity action brought in the district in which a substantial part of the events giving rise to the claim occurred.

11.     Exercise of personal jurisdiction over Defendants is proper pursuant to D.C. CODE §§ 13-422, 13-423(a)(1) (2011), or § 13-423(a)(2) (2011), and/or because Defendants are residents of the District of Columbia.

## FACTUAL BACKGROUND

### The Defendants' Improper Retention of the Embassy's $1,550,000 Tax Refund

12.     The Embassy retained Ugwuonye and ECU Associates to provide competent and complete legal services relating to the sales of several of the Embassy's properties, including its property located at 2201 M Street, NW, Washington, DC (the "Property"). Ugwuonye identified himself as acting on behalf of both ECU Law Group and ECU Associates in his correspondence with the Embassy.

13.     Under the terms of their engagement, the Embassy would pay Ugwuonye and ECU Associates an amount equal to three and one-half percent (3.5%) of the sale price of the Property as complete payment for fulfillment of their obligations under the contract. Ugwuonye and ECU Associates would receive the proceeds from the sale and then remit those funds to the Embassy. The Embassy executed a power of attorney authorizing Ugwuonye and ECU Associates to receive the funds on its behalf.

14.     The Embassy sold the Property on November 30, 2006.

15.     The Embassy paid Ugwuonye and ECU Associates in full for their services relating to the sale of the Property. The Defendants have never claimed otherwise.

16.     When the Embassy sold the Property, Ugwuonye and ECU Associates failed to submit the necessary paperwork exempting a foreign sovereign from property taxes.

17.     Because Ugwuonye and ECU Associates failed to submit the required paperwork, the IRS withheld property taxes in the amount of $1.55 million upon the sale of the Property.

18.     The Embassy retained Ugwuonye and ECU Associates to file the necessary paperwork for the IRS to refund the $1.55 million tax lien, collect the funds, and deliver the funds to the Embassy.  In a written contract signed on August 22, 2007, the Embassy engaged Ugwuonye and ECU Associates "to act as the Embassy's lawyers for the purpose of recovering the amounts withheld by the IRS."  The engagement agreement contained the following compensation terms:

> As fees for its services, the Attorney shall be entitled to five per cent (5%) of any amount recovered on behalf of the Embassy.  The Attorney is further granted a power of attorney to endorse any draft or instrument received by it and to apply a lien for its fees on the said draft or instrument.

19.     Ugwuonye received the $1.55 million IRS tax refund and deposited it into an account in the name of ECU Associates on November 20, 2007.  On December 3, 2007, Ugwuonye withdrew funds totaling $550,000.  He has never explained why he withdrew those funds or what they were used for.

20.     In a letter dated December 12, 2007, Ugwuonye made the following representations and promises to the Embassy:

> This is further in regard to the refund from the IRS in the amount of $1,550,000, a copy of which check was previously made available to you.  As per our discussion and our retainer agreement with the Embassy, we shall be disbursing the check to the Embassy of Nigeria promptly upon its clearance.  We expect this to be completed by the 22nd day of December 2007.

21.     Ugwuonye did not disclose to the Embassy that the check had already cleared and that he had already withdrawn $550,000 from the account.

22.     Despite his December 12, 2007 promise to deliver the $1.55 million to the Embassy, Ugwuonye did not remit the tax refund to the Embassy or inform the Embassy why he had not done so.  Instead, Ugwuonye continued to periodically withdraw funds from the account.

23.     On May 8, 2008, Ugwuonye made three withdrawals totaling $30,000, which reduced the balance in the account to $195.65.  The Defendants did not disclose to the Embassy that they depleted the Embassy's trust account, and they have never explained what the funds were used for.

24.     During the many months following Ugwuonye's December 12, 2007 promise to deliver the tax refund to the Embassy, the Embassy attempted on several occasions to communicate with Ugwuonye to ascertain why he had not yet delivered the tax refund to the Embassy. Ugwuonye did not respond to the Embassy's inquiries.

25.     On June 2, 2008, the Embassy's Finance Attaché informed the Embassy's Minster/Head of Chancery:

> It is equally worth of note your Excellency that despite the fact that the Embassy Lawyer confirmed the receipt of the Tax amount of $1,550,000.00 in his letter dated December 12, 2007 on page 245, this amount is yet to be received by the Mission and no reason was given by writhing (sic) to the Embassy and the Lawyer has remained incommunicado any time I try to reach him.

26.     Eight months after Ugwuonye sent his December 12, 2007 letter, the Defendants still had neither remitted the tax refund to the Embassy nor informed the Embassy why they had not done so.

27.     On August 5, 2008, the Embassy wrote a letter to Ugwuonye and ECU Associates. In the letter, the Embassy demanded that Ugwuonye and ECU Associates deliver the $1.55 million plus interest within fourteen (14) business days of receiving the letter.  The Embassy also expressed frustration with  the Defendants' failure to communicate with the Embassy about this matter.

28.     On August 12, 2008, Defendant Fein responded to the Embassy's August 5, 2008 letter and identified himself as counsel for Ugwuonye and ECU Associates.  Fein did not dispute that the Embassy had paid Ugwuonye and ECU Associates in full for the services they provided to the Embassy relating to the sale of its properties.  However, Fein informed the Embassy that Ugwuonye and ECU Associates were keeping the $1.55 million tax refund because they represented

General Abdusalami Abubakar, a former member of the military junta that ruled Nigeria from 1993 to 1999, in litigation against General Abubakar in the United States District Court for the Northern District of Illinois. That litigation is titled *Hafsat Abiola, et al., v. Gen. Abdusalami Abubakar*, Case No. 02 C 6093 (N.D. Ill.) ("*Abubakar*"). Fein informed the Embassy that Ugwuonye "paid himself what was due by the GON on his legal bill as was his right under routine contract law."

29.    The GON was not a party in the *Abubakar* litigation. Fein represented that the GON made written and oral commitments to pay Ugwuonye's fees, but he neither identified who within the GON made any such commitments nor provided any evidence of any written commitments. Fein enclosed a docket entry from the *Abubakar* litigation indicating that a settlement in the case was "being funded by the government of Nigeria, which is not a party to the lawsuit." The docket entry does not reflect who represented to the Court that the GON was funding the settlement, whether any documentary support for that statement was provided to the Court, or whether the GON had agreed to fund Ugwuonye and ECU Associates' fees. Fein did not provide any evidence of the actual amount of Ugwuonye and ECU Associates' fees in the *Abubakar* case, what they had done to earn those fees, or whether they had submitted invoices to the GON. Fein stated that the GON had paid another unidentified attorney "substantial" legal fees in the *Abubakar* case, but he did not explain why the GON allegedly failed to pay Ugwuonye and ECU Associates. Fein also did not explain why Ugwuonye and ECU Associates never informed the Embassy that they decided not to remit the tax refund as promised.

30.    Fein wrote his August 12, 2008 letter on "Bruce Fein & Associates, Inc." letterhead. He did not disclose that he was Ugwuonye's partner at ECU Associates and that he had a personal financial interest, either directly or indirectly as a partner of Defendants, in retaining the $1.55 million tax refund. Fein also did not disclose that when he wrote his letter as counsel for Ugwuonye and ECU Associates, he was simultaneously representing the GON as its counsel in litigation

pending in the United States District Court for the Eastern District of New York titled *Azikiwe, et al. v. Nigeria Airways, Ltd., et al.*, Case No. 1:03-cv-06387-FB-CLP (E.D.N.Y.) ("*Azikiwe*"). Fein also represented General Abubakar in the *Abubakar* litigation, which he did not disclose to the Embassy.

31.     On information and belief, Fein received a portion of the Embassy's $1.55 million tax refund. Fein's August 12, 2008 letter demonstrates that Fein knew the Embassy did not consent to the misappropriation of its tax refund as supposed payment for legal services rendered in the *Abubakar* or *Azikiwe* litigation. Nevertheless, Fein did not remit the funds to the Embassy or disclose to the Embassy that he was retaining the funds.

32.     Fein's representation of Ugwuonye and ECU Associates in a dispute against the Embassy while he simultaneously was representing the GON in the *Azikiwe* litigation constituted an inherent conflict of interest under rules regulating members of the bars of the District of Columbia, Maryland, and New York. Fein's unethical representation of Ugwuonye and ECU Associates in this dispute caused the Embassy to refrain temporarily from further efforts to recover the misappropriated funds and may have facilitated the improper dissipation of the Embassy's funds.

33.     The Embassy disputed the Defendants' refusal to deliver its tax refund. Embassy officials met with Ugwuonye on May 15, 2009 to discuss the matter. During the meeting, the Embassy requested copies of the invoices that Ugwuonye believed were outstanding.

34.     Ugwuonye did not provide copies of any invoices he supposedly had submitted to the GON. Instead, on May 29, 2009, Ugwuonye prepared and submitted to the Embassy a single-page invoice for $2,842,500, as follows:



285

**ECULAW GROUP**
850 Sligo Avenue, Suite 400
Silver Spring, MD 20910, USA
Tel: 301-588-9315
Fax: 301-588-9318

(1)  Ndidi Azikiwe, et al. v. Federal Republic of Nigeria, et al.:
     U.S.D.C., EDNY: Case No. 1:03 CV 06387
     *(Case resolved/closed)*

                              Balance outstanding    =    $1,642,500

(2)  Chief MKO Abiola, et al. v. General Abdulsalami Abubakar:
     (a)   United States District Court, Eastern District of Michigan
           Case No: **01-cv-70714.**
     (b)   United States District Court, Northern District of Illinois:
           Case No.: **No. 02-CV-06093.**
     (c)   United States Court of Appeals for the Seventh Circuit:
           Case No.: **03-3089 and 06-2940.**
     (d)   United States Supreme Court:
           Case No.:   **05-788.**
           *(Case resolved/closed)*

                              Balance outstanding    =    $1,200,000[1]

                              *Total outstanding balance*   =   **$2,842,500.**

*N.B.:*
*This invoice is accompanied with a note dated May, 29, 2009.*

---

[1] This figure reflects a discount by over $500,000. All fees for services and costs incurred from January through
May of 2008 are waived.

35.     In his May 29, 2009 invoice and cover memorandum, Ugwuonye did not provide the

Embassy with an itemization of any of Defendants' services, any contract Defendants had with the

GON, copies of any invoices Defendants previously had sent to the GON, or any explanation why

the GON allegedly failed to pay the invoices.  Ugwuonye stated that the Embassy agreed that he

would return the tax refund to the Embassy if the GON paid his outstanding bills.

36.     The Embassy wrote a letter to Ugwuonye and ECU Associates on June 8, 2009, denying any agreement that the Defendants would only have to return the $1.55 million tax refund if the GON paid them nearly $3 million for other allegedly outstanding fees.  The Embassy requested a copy of the contract between the Defendants and the GON relating to the allegedly outstanding fees, a description of any previous attempts to settle the matter, evidence of any payments already made to the Defendants, and the most recent notice to make payments.  The Defendants did not provide any of the requested information.

37.     On September 2, 2010, the Embassy, through counsel, delivered a letter to Ugwuonye and ECU Associates demanding that they return the Embassy's tax refund.  The Embassy also demanded that the Defendants provide copies of documents allegedly supporting their entitlement to the tax refund, including documents evidencing any agreement by the GON to pay for their services, prior invoices, any and all correspondence relating to payment or nonpayment of prior invoices, and a detailed billing report.  The Embassy also asked Ugwuonye to identify all explanations the GON had given him for not paying any prior invoices.  The Defendants did not respond to the Embassy's letter or produce any of the requested documents.

38.     On January 7, 2011, the Embassy delivered a letter to Fein (through his counsel) asking Fein to confirm whether he received any portion of the tax refund and whether he represented the GON in the *Azikiwe* and *Abubakar* litigation.  The Embassy requested copies of documents relating to Fein's representation of the GON, including all contracts, all prior invoices, a detailed billing report describing his services, and all correspondence relating to his fees.  The Embassy also asked Fein to identify any persons who engaged Fein or agreed to pay for his services. The Embassy advised Fein that he had a professional and ethical responsibility to promptly respond to its requests for documents and information.

39.     Fein never responded to the Embassy's January 7, 2011 letter.  He never provided any of the requested documents and information.

40.     The Defendants still have not returned the Embassy's $1.55 million tax refund.

**Ugwuonye's Prior Unethical Conduct and Unauthorized Practice of Law**

41.     Ugwuonye has previously been disciplined by the Maryland Court of Appeals for violating the Maryland Lawyers' Rules of Professional Conduct.

42.     On July 24, 2008 the Maryland Court of Appeals suspended Ugwuonye from the practice of law for 90 days – from August 23 through November 21, 2008 – because he violated MRPC 1.1, 1.3, 1.4, 1.5, 1.15, 1.16(d) and 8.4(d) and Md. Code Ann., Bus. Occ. & Prof. § 10-306. *See Attorney Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 373-375 (2008).

43.     The Attorney Grievance Commission of Maryland described its disciplinary action against Ugwuonye as follows:

> UGWUONYE, Ephraim, Jr. - 90-day Suspension by the Court of Appeals on July 24, 2008 for failure to act with diligence and competence in representing a client by failing to respond to a notice of contemplated dismissal for lack of service. With regard to another client, he took a fee for a frivolous case and failed to return an unearned fee (which he had deposited in his operating account).

*See* http://www.courts.state.md.us/attygrievance/sanctions09.html (last visited on June 1, 2011).

44.     Ugwuonye never informed the Embassy that he had been suspended from the practice of law.

45.     Ugwuonye practiced law *during* his 90-day suspension.  For example, Ugwuonye continued to represent six defendants, including the GON, in the *Azikiwe* litigation while he was suspended from practicing law.

46.     On September 9, 2008, the United States District Court for the Eastern District of New York imposed reciprocal discipline upon Ugwuonye as a result of his suspension from practicing law by the Maryland Court of Appeals.  The court suspended Ugwuonye from practicing

law until further order of the court.   Nevertheless, Ugwuonye continued to represent the Defendants in the *Azikiwe* matter pending before the court.

47.     On October 30, 2008, the D.C. Court of Appeals imposed reciprocal discipline upon Ugwuonye as a result of his suspension from practicing law by the Maryland Court of Appeals.  The court suspended Ugwuonye from practicing law for 90 days.  The court further ordered that "for purposes of reinstatement respondent's suspension will not begin to run until such time as he files an affidavit that fully complies with the requirements of D.C. Bar. R. XI, § 14(g)."  The court has not issued an order reinstating Ugwuonye to practice law.  Ugwuonye did not inform the Embassy that he had been – and remains – suspended from the practice of law by the D.C. Court of Appeals.

48.     On December 18, 2008, the New York Supreme Court, Appellate Division, Third Judicial Department, imposed reciprocal discipline upon Ugwuonye as a result of his suspension from practicing law by the Maryland Court of Appeals.  The New York Supreme Court ordered that Ugwuonye was "suspended from the practice of law for a period of 90 days, effective immediately, and until further order of this Court."  The court also ordered that Ugwuonye was "forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority . . . ."  The court has not issued an order reinstating Ugwuonye to practice law.  Ugwuonye again failed to inform the Embassy that he had been suspended from the practice of law.

49.     Despite the fact that the New York Supreme Court suspended Ugwuonye from practicing law and specifically forbade him from appearing as an attorney before any court, Ugwuonye continued to represent the GON and other defendants in the *Azikiwe* litigation before the United States District Court for the Eastern District of New York.

50.     As set forth above, Fein informed the Embassy on August 12, 2008, that Ugwuonye kept the $1.55 million tax refund to "[pay] himself what was due by the GON" for services he

allegedly performed in the *Azikiwe* matter. Fein's letter was written after the Maryland Court of Appeals suspended Ugwuonye. It is possible that Ugwuonye is purporting to charge the Embassy for services he performed while engaged in the unauthorized practice of law.

51.     Although Ugwuonye is still suspended from practicing law in Washington, D.C., he is currently lead defense counsel in a case pending before the United States District Court for the District of Columbia titled *Barringer, et al., v. U.S. One Transportation, LLC, et al.*, Case No. 1:10-cv-01656-RMU (D.D.C.).

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Contract – All Defendants

52.     Plaintiff re-alleges and incorporates the allegations set forth above as if fully set forth herein.

53.     In a written contract signed on August 22, 2007, the Embassy engaged Ugwuonye and ECU Associates "to act as the Embassy's lawyers for the purpose of recovering the amounts withheld by the IRS."

54.     The parties agreed that the Defendants' fees for these services would be five percent (5%) of any amount recovered.

55.     The Defendants recovered $1.55 million from the IRS.

56.     Pursuant to the contract, the Defendants were obligated to deliver the entire $1.55 million to the Embassy.

57.     The Defendants did not deliver the $1.55 million, or any portion thereof, to the Embassy.

58.     Pursuant to the contract, the Defendants' fees for recovering the funds amounted to $77,500.

59.     The Defendants did not have any contractual or other right to deduct the $77,500 from the $1.55 million they were obligated to deliver to the Embassy.  The contract only permitted the Defendants to exercise a lien in the amount of their fees until they obtained authorization from the Embassy (or a court order) to withdraw the funds from the trust account.

60.      The contract only permitted the Defendants to exercise a lien in the amount of their fees to recover the funds withheld by the IRS.  The contract did not permit the Defendants to exercise a lien or withdraw funds in the amount of any other fees they believed they were owed by the Embassy or the GON.

61.     Fein is jointly and severally liable as a partner of the other Defendants.

62.     ECU Law Group is jointly and severally liable because the other Defendants referred to ECU Law Group and ECU Associates interchangeably and treated them as one and the same entity.

63.     WHEREFORE, Plaintiff demands judgment from and against Defendants in the amount of $1,550,000 in compensatory damages, punitive damages in an amount to be determined at trial, interest from the date of the occurrence, and costs and attorneys' fees.

### COUNT II

### Breach of Implied Covenant of Good Faith – All Defendants

64.     Plaintiff re-alleges and incorporates the allegations set forth above as if fully set forth herein.

65.     Ugwuonye, on behalf of himself and the other Defendants, led the Embassy to believe that the Defendants would recover the $1.55 million withheld by the IRS upon the sale of the Property and deliver the funds to the Embassy.

66.     Ugwuonye, on behalf of himself and the other Defendants, led the Embassy to believe that the Defendants would only charge the Embassy 5% of any funds recovered from the

IRS, which would be no more than $77,500, and that the Embassy would receive the remainder of the $1.55 million.

67.     Based on the Defendants' representations, the Embassy engaged Ugwuonye and ECU Associates in a written contract signed on August 22, 2007 to recover the $1.55 million withheld by the IRS.

68.     The Defendants did not behave fairly and reasonably in their performance of the contract because they refused to deliver the $1.55 million, or any portion thereof, to the Embassy after they recovered the funds from the IRS.

69.     The Defendants led the Embassy to believe that they would obtain the tax refund for the Embassy and that they were acting in the Embassy's best interests when they obtained and deposited the Embassy's funds into their bank account.  It is now clear that the Defendants saw, and took advantage of, an opportunity to seize money from the Embassy to satisfy fees that they believed they were owed by the GON for other unrelated services.

70.     After seizing the Embassy's funds and withdrawing funds for their own purposes, the Defendants wrote a letter to the Embassy on December 12, 2007 in which they misrepresented that the funds were not yet available, but that they would deliver the funds to the Embassy by December 22nd.  The Defendants did not deliver the funds as promised.  The Defendants evaded the spirit of the contract by promising to return the Embassy's funds while retaining them for the Defendants' own use.

71.     The Defendants also did not behave fairly and reasonably in their performance of the contract because they ignored repeated requests by the Embassy to deliver the funds to it, as well as repeated requests for documents and information relating to the Defendants' refusal to deliver the funds to it.

72.     Fein is jointly and severally liable as a partner of the other Defendants.

73.     ECU Law Group is jointly and severally liable because the other Defendants referred to ECU Law Group and ECU Associates interchangeably and treated them as one and the same entity.

74.     WHEREFORE, Plaintiff demands judgment from and against Defendants in the amount of $1,550,000 in compensatory damages, punitive damages in an amount to be determined at trial, interest from the date of the occurrence, and costs and attorneys' fees.

## COUNT III

### Breach of Fiduciary Duty – All Defendants

75.     Plaintiff re-alleges and incorporates the allegations set forth above as if fully set forth herein.

76.     The attorney-client relationship between the Embassy and the Defendants was inherently one of trust.

77.     The Embassy retained the Defendants to perform legal services for it and to act on its behalf.

78.     The Embassy also granted a power of attorney to the Defendants to act on its behalf.

79.     Ugwuonye, both individually and as a representative of the other Defendants, manifested his assent to this relationship by entering into the August 22, 2007 contract, performing legal services for the Embassy, and acting on the Embassy's behalf.

80.     As such, the Defendants owed the Embassy the fiduciary duties of both good-faith and loyalty.

81.     The Defendants breached their fiduciary duties in multiple ways.  For example, the Defendants led the Embassy to believe that they would obtain the tax refund for the Embassy and that they were acting in the Embassy's best interests when they obtained and deposited the

Embassy's funds into their bank account.  They led the Embassy to believe that the Defendants would only charge the Embassy 5% of any funds recovered from the IRS, which would be no more than $77,500, and that the Embassy would receive the remainder of the $1.55 million.  It is now clear that the Defendants saw, and took advantage of, an opportunity to seize money from the Embassy to satisfy fees that they believed they were owed by the GON for other unrelated services.

82.     After obtaining the IRS tax refund, depositing it into ECU Associates' account, and then withdrawing hundreds of thousands of dollars, Ugwuonye misrepresented to the Embassy in his December 12, 2007 letter on behalf of the Defendants that the funds had not yet cleared. Ugwuonye also misrepresented in his letter that the Defendants would deliver the funds to the Embassy as soon as the IRS tax refund check cleared.  The Defendants had already broken that promise by withdrawing over a half million dollars.

83.     By refusing to deliver the $1,550,000 tax refund to the Embassy, the Defendants exercised unlawful control over money that was not their own.

84.     By refusing to deliver the $1,550,000 tax refund to the Embassy, the Defendants denied and repudiated the Embassy's right to exercise dominion over the money.

85.     The Defendants also breached their fiduciary duties to the Embassy by withdrawing the $1.55 million from the Embassy's trust account without authorization by the Embassy (or a court) to do so.

86.     The Defendants also breached their fiduciary duties to the Embassy by withdrawing the $1.55 million from the Embassy's trust account because Ugwuonye admitted (if he is to be believed) in his affidavit that he submitted with his motion to dismiss in this case (*see* Dkt. #19-13), that he was informed, multiple times, that the Defendants' fees for any services other than recovery of the IRS funds were to be paid directly from the Central Bank of Nigeria, not by withdrawing the fees from the Embassy's trust account.

87.     The Defendants' conversion of the Embassy's funds was aggravated because it was reckless, wanton, and in willful disregard of the Embassy's rights.  It thus justifies the imposition of punitive damages.

88.     The Defendants also breached their fiduciary duties to the Embassy by refusing to respond to multiple requests by the Embassy for documents and information relating to the Defendants' claim that they were entitled to keep the Embassy's $1.55 million.  For example, during a meeting with Ugwuonye on May 15, 2009, the Embassy requested copies of the invoices that the Defendants believed were outstanding.  The Defendants did not deliver the requested documents.

89.     On June 8, 2009, the Embassy requested a copy of the contract between the Defendants and the GON relating to the allegedly outstanding fees, a description of any previous attempts to settle the matter, evidence of any payments already made to the Defendants, and the most recent notice to make payments.   Again, the Defendants did not deliver the requested documents.

90.     On September 2, 2010, the Embassy again requested documents and information relating to the Defendants' claim of entitlement to the Embassy's tax refund.  The Defendants did not respond to the Embassy's request.

91.     On January 7, 2011, the Embassy delivered a letter to Fein asking Fein to confirm whether he received any portion of the tax refund.  The Embassy also asked Fein to provide documents and information relating to the Defendants' claim of entitlement to the Embassy's tax refund.  Fein did not respond to the Embassy's requests.

92.     Defendants' refusal to deliver the $1.55 million to the Embassy; withdrawal of funds from the Embassy's trust account without authorization; misrepresentations to the Embassy that the IRS tax refund check had not yet cleared and the funds would be delivered to the Embassy upon the check's clearance; and refusals to respond to requests for documents and information constitute

violations of the rules of professional conduct governing Ugwuonye and Fein as members of the bars of the District of Columbia, Maryland, and New York.

93.     Each Defendant is jointly and severally liable because the Defendants are or were partners.

94.     WHEREFORE, Plaintiff demands judgment from and against Defendants in the amount of $1,550,000 in compensatory damages, punitive damages in an amount to be determined at trial, interest from the date of the occurrence, and costs and attorneys' fees.

## COUNT IV

### Conversion – All Defendants

95.     Plaintiff re-alleges and incorporates the allegations set forth above as if fully set forth herein.

96.     The Defendants took possession of the Embassy's $1,550,000 tax refund by accepting the funds from the IRS on behalf of the Embassy.

97.     The Defendants then refused to deliver the money to the Embassy.

98.     By refusing to deliver the $1,550,000 tax refund to the Embassy, the Defendants exercised unlawful control over money that was not their own.

99.     By refusing to deliver the $1,550,000 tax refund to the Embassy, the Defendants denied and repudiated the Embassy's right to exercise dominion over the money.

100.    The Defendants' conversion of the Embassy's funds was aggravated because it was reckless, wanton, and in willful disregard of the Embassy's rights.  It thus justifies the imposition of punitive damages.

101.    Each Defendant is jointly and severally liable because the Defendants are or were partners.

102.     WHEREFORE, Plaintiff demands judgment from and against Defendants in the amount of $1,550,000 in compensatory damages, punitive damages in an amount to be determined at trial, interest from the date of the occurrence, and costs and attorneys' fees.

## COUNT V

### Unjust Enrichment – All Defendants

103.     Plaintiff re-alleges and incorporates the allegations set forth above as if fully set forth herein.

104.     The Defendants took possession of the Embassy's $1,550,000 tax refund by accepting the funds from the IRS on behalf of the Embassy.

105.     The Defendants then refused to deliver the money to the Embassy.

106.     The Defendants led the Embassy to believe that they would obtain the tax refund for the Embassy and that they were acting in the Embassy's best interests when they obtained and deposited the Embassy's funds into their bank account.  It is now clear that the Defendants saw, and took advantage of, an opportunity to seize money from the Embassy to satisfy fees that they believed they were owed by the GON for other unrelated services.  Under these circumstances, the Defendants' retention of the $1,550,000 is unjust.

107.     Despite repeated requests, none of the Defendants have provided any documents or information supporting their claim that they were entitled to the money because they performed legal services for the GON that were unrelated to their recovery of funds from the IRS.  The Defendants' refusal to respond to the Embassy's requests for documents and information renders their retention of the $1.55 million unjust.

108.     To the extent that the Defendants are retaining the $1.55 million to pay for services allegedly rendered while Ugwuonye was suspended from the practice of law, the retention of the funds constitutes unjust enrichment.

109.     Each Defendant is jointly and severally liable because the Defendants are or were partners.

110.     WHEREFORE, Plaintiff demands judgment from and against Defendants in the amount of $1,550,000 in compensatory damages, punitive damages in an amount to be determined at trial, interest from the date of the occurrence, and costs and attorneys' fees.

## COUNT VI

### Constructive Trust – All Defendants

111.     Plaintiff re-alleges and incorporates the allegations set forth above as if fully set forth herein.

112.     The Defendants breached their fiduciary and contractual duties and converted the Embassy's $1,550,000 tax refund by refusing to deliver the funds to the Embassy.

113.     The Defendants now unlawfully control $1,550,000 that is rightfully the Embassy's, in denial or repudiation of the Embassy's rights thereto.

114.     The Defendants have been unjustly enriched by continued possession of the Embassy's $1,550,000 tax refund.

115.     Therefore, the Defendants had an equitable duty to convey the $1,550,000 to the Embassy, but did not do so.

116.     WHEREFORE, Plaintiff demands that a constructive trust be placed on funds equal to the amount which Defendants wrongfully retained and/or used in breaching their fiduciary and contractual duties and converting the Embassy's tax refund, which amount is no less than $1,550,000 plus interest from the date of the occurrence.  The Embassy also demands that Defendants deliver a full and complete accounting of the Embassy's $1,550,000 tax refund that they received from the IRS.

## COUNT VII

### Declaratory Judgment – All Defendants

117.    Plaintiff re-alleges and incorporates the allegations set forth above as if fully set forth herein.

118.    An actual controversy has arisen between the Embassy and Defendants regarding the rights, duties, and obligations of the parties.

119.    The IRS determined that the Embassy was entitled to a refund of improperly collected taxes in the amount of $1,550,000.

120.    The Defendants were retained by the Embassy as its attorneys and agents to collect the tax refund from the IRS and deliver the funds to the Embassy.

121.    Defendants accepted delivery of the $1,550,000 from the IRS.  On December 12, 2007, Ugwuonye, on behalf of himself and the other Defendants, promised to deliver the funds to the Embassy.

122.    The Defendants did not deliver the $1,550,000 to the Embassy, and they refused or ignored multiple demands by the Embassy that they deliver the money to it.

123.    The Defendants took the position that they allegedly were not obligated by law, contract or otherwise to deliver the money to the Embassy.  Defendants told the Embassy that they were entitled to retain the funds as payment for other services that they allegedly performed for the GON.

124.    On September 2, 2010, the Embassy, through counsel, delivered a letter to Ugwuonye and ECU Associates demanding immediate delivery of the $1,550,000 tax refund, plus interest.  The Embassy informed Ugwuonye that it would consider his refusal to do so – either in writing or by failing to respond to the demand – to be a final declaration by Ugwuonye of alleged

22

entitlement to the funds constituting an actual controversy upon which to seek a declaratory judgment against him and his firm.

125.     Neither Ugwuonye, nor any of the other Defendants, responded to the Embassy's September 2, 2010 letter, and they did not deliver the tax refund to the Embassy.

126.     WHEREFORE, Plaintiff seeks a declaration by the Court of the rights, duties and obligations of the parties, including (i) a declaration that Plaintiff is entitled to the tax refund of $1,550,000, plus interest, and (ii) a declaration that Defendants are not entitled to withhold the tax refund from the Embassy for any reason, including any claim by Defendants that they are allegedly entitled to retain the funds as compensation for other services performed for the GON.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and a judgment against all Defendants, jointly and severally, as follows:

A. entering judgment against Defendants and in favor of Plaintiff for each violation alleged in this Complaint;

B. issuing a declaration of the rights, duties and obligations of the parties, including (i) a declaration that Plaintiff is entitled to the tax refund of $1,550,000, plus interest, and (ii) a declaration that Defendants are not entitled to withhold the tax refund from the Embassy for any reason, including any claim by Defendants that they are allegedly entitled to retain the funds as compensation for other services performed for the GON;

C. awarding damages in favor of Plaintiff in an amount to be determined at trial but that is no less than $1,550,000;

D. awarding punitive damages;

E. awarding pre- and post-judgment interest;

F.  entering a constructive trust on funds equal to the amount which Defendants wrongfully retained and/or used in breaching their fiduciary duty and converting the Embassy's tax refund, but that is no less than $1,550,000 plus interest from the date of the occurrence, and requiring Defendants to deliver a full and complete accounting of the Embassy's $1,550,000 tax refund;

G.  awarding Plaintiff its costs and reasonable attorneys' fees incurred in this action;

H.  retaining jurisdiction for the purpose of enabling Plaintiff to apply to the Court for such further orders and directions as may be necessary or appropriate for the construction or carrying out of any orders made in this action, for the modification of any such orders, for the enforcement of compliance therewith and the punishment of any violations thereof; and

I.  awarding Plaintiff all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,


/s/ T. Michael Guiffré
T. Michael Guiffré (D.C. Bar No. 465745)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Phone:  (202) 457-6000
Fax:  (202) 457-6315
mguiffre@pattonboggs.com

*Counsel for Plaintiff Embassy of the Federal Republic of Nigeria*

Date:  June 2, 2011