**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EMBASSY OF THE FEDERAL REPUBLIC OF NIGERIA,**<br><br>Plaintiff,<br><br>v.<br><br>**EPHRAIM EMEKA UGWUONYE**, *et al*.,<br><br>Defendants. | Civil Action No. 10-cv-1929 (BJR)<br><br>**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIM** |

This matter is before the Court on a motion to dismiss by Plaintiff, the Embassy of the Federal Republic of Nigeria ("the Embassy"). *See* Dkt. #43. The Embassy asks the Court to dismiss the Counterclaim filed by Defendants Ephraim Emeka Ugwuonye and ECU Associates, P.C. ("Defendants").[1] The Counterclaim alleges a breach of contract by the Embassy for nonpayment of past legal services. *See generally* Counterclaim (Dkt. #44) at ¶¶ 1-79.[2] The Embassy argues that the Counterclaim must be dismissed for lack of subject matter jurisdiction. In the alternative, the Embassy argues that the Counterclaim be dismissed as time-barred by the relevant statute of limitations. The Embassy's motion is denied as to Defendant Ugwuonye, and granted as to Defendant ECU Associates, P.C.[3]

---

[1] The Counterclaim at issue was filed by Ugwuonye and ECU Associates, P.C.; the other Defendants to this action (Bruce E. Fein and ECU Law Group) did not join in the filing. "Defendants," as used in this Order, refers only to Ugwuonye and ECU Associates, P.C.

[2] The Court notes that the "Introduction" section to the Counterclaim states that they are "seeking damages for breach of contract and unjust enrichment." Counterclaim ¶ 1. However, there is only one count in the Counterclaim, which is for breach of contract. *Id*. ¶¶ 77-79. Furthermore, neither Ugwuonye nor the Embassy makes reference to a claim for unjust enrichment in their respective briefs. Therefore, the Court does not consider such a claim to be included in the Counterclaim.

[3] Defendant Ugwuonye filed an opposition to the Embassy's motion to dismiss. *See* Dkt. #74. Defendant ECU Associates, P.C. did not file an opposition.

I.  **BACKGROUND**

In is uncontested that Ugwuonye acted as legal counsel for the Embassy in several real estate transactions and that, in November 2007, he obtained a refund of property taxes from the Internal Revenue Service ("IRS") for the Embassy in the amount of $1.55 million.  The Embassy alleges that Ugwuonye never delivered these funds.  Am. Compl. (Dkt. #33) ¶ 1.

On August 25, 2011, Defendants filed their Answer and Counterclaim to the Embassy's Amended Complaint.[4]  Defendants' Counterclaim alleges that Ugwuonye acted as counsel to the Government of Nigeria and the Embassy from 2001 until the filing of this action by the Embassy.  Counterclaim ¶ 19.  Defendants contend that Ugwuonye was encouraged by the Government of Nigeria to build his practice in a way that would best suit the needs of the Embassy and the Government of Nigeria.  Defendants allege that the Government of Nigeria and the Embassy promised to pay Defendants for any owed legal services, but have repeatedly failed to pay the fees in full, often falling over a year behind.  *Id.* ¶ 26-27.  Defendants relate a series of conversations between October 2006 and January 2008 with the Attorney General of Nigeria and other officials wherein Defendants were promised that payments were forthcoming.  *Id.* ¶¶ 28-34, ¶ 44.  Defendants also set out a number of specific instances where the Embassy failed to pay Defendants for specific assignments.  *Id.* ¶¶ 34-42.

On September 28, 2011, the Embassy filed the instant motion to dismiss.  On April 3, 2012, this case was reassigned to the undersigned judge.  On April 19, 2012, the Court granted the Embassy's motion to dismiss the Counterclaim as conceded.  Minute Order #3 of April 19, 2012.  On May 17, 2012, Defendant Ugwuonye filed a motion for reconsideration of the Court's dismissal of Defendants' Counterclaim.  *See* Dkt. #60.  On June 25, 2012, the parties appeared

---

[4]  The Answer and Counterclaim were attached as proposed filings to a motion for leave to file out of time.  The motion was granted, and the documents were placed on the docket on October 6, 2011.  *See* Dkt. #44.  The Embassy filed its motion to dismiss the Counterclaim before the Answer was docketed.

before this Court. Following that status conference, the Court granted Ugwuonye's motion for reconsideration and allowed him to file an opposition to the Embassy's motion to dismiss the Counterclaim. Order of June 26, 2012 (Dkt. #70).

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is to test whether the court has jurisdiction to properly hear the case before it. Because federal courts are courts of limited jurisdiction, the court must have a statutory basis to exercise its jurisdiction. *Nat'l Ass'n of Home Builders v. EPA*, 731 F. Supp. 2d 50, 53 (D.D.C. 2010). To this end, statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co. Account No. 8870792*, 601 F. Supp. 2d 252, 256 (D.D.C. 2009). Moreover, the burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

### B.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a counter-defendant may file a motion to dismiss to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 47-48 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also* Fed. R. Civ. P. 12(b)(6). Ambiguities must be resolved in favor of the counter-plaintiff, giving him the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in the complaint. *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 2d at 47-48.

To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts that, taken as true, provide "plausible grounds" that discovery will reveal evidence to support the counter-

plaintiff's allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [counter-]plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counter-]defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556)). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id*. (citation omitted). Although the court must construe the complaint in a light most favorable to the counter-plaintiff, the court is not required to accept factual inferences that are unsupported by facts or legal conclusions cast in the form of factual allegations. *City of Harper Woods Emps' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009). The court's function is not to weigh potential evidence that the parties might present at a later stage, but to assess whether the pleading alone is legally sufficient to state a claim for which relief may be granted. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998). "Where a complaint pleads facts that are merely consistent with a [counter-]defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

III.   DISCUSSION

    A.   **The "commercial activity" exemption under the Foreign Sovereign Immunities Act is applicable to the Embassy's contracts with Defendants**

Ugwuonye concedes that the Embassy is a "foreign state" as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.*, and, as such, the FSIA is

4

the exclusive basis for jurisdiction over the Embassy.[5] Opp. at 3, 5. Under the FSIA, a foreign state is presumed to be immune from the jurisdiction of the United States courts. *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005). That presumption can be overcome only if the party asserting a claim against the foreign state can show that one of the exceptions to immunity provided in 28 U.S.C. §§ 1605-1607 applies. *Id.*

Defendants assert two exceptions to immunity in their Counterclaim: 28 U.S.C. § 1605(a)(5) and 28 U.S.C. § 1605(a)(7). In his opposition to the Embassy's motion to dismiss, Ugwuonye argues that two other exceptions applied: 28 U.S.C. § 1605(a)(2) and 28 U.S.C. § 1607.

The Court first addresses the exceptions asserted in the Counterclaim. Section 1605(a)(5) pertains to claims "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." 28 U.S.C. § 1605(a)(5). As the Counterclaim is for a breach of contract, an exception concerning tortious conduct is clearly inapplicable.

Section 1605(a)(7) was repealed in 2008 by the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, and replaced with 28 U.S.C. § 1605A. *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 18 (D.D.C. 2009). Section 1605A, like the section it replaces, concerns a waiver of immunity for state sponsorship of or material support for acts of terrorism. 28 U.S.C. § 1605A(a). The exception applies only to those states that are designated as state sponsors of terrorism. 28 U.S.C. § 1605A(a)(2)(A)(i). Since Nigeria is not a designated state sponsor of terrorism,[6] this exception is also inapplicable.

---

[5] Ugwuonye submits, "for the sake of argument," that diversity jurisdiction could apply. Opp. at 5. Ugwuonye is incorrect. The FSIA provides the exclusive basis for jurisdiction over foreign states in federal court. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).

[6] State Sponsors of Terrorism, http://www.state.gov/j/ct/list/c14151.htm (last visited Oct. 22, 2012).

The Court turns to the two exceptions cited in Defendant Ugwuonye's opposition to the Embassy's motion to dismiss. Section 1605(a)(2) states that a foreign state shall not be immune from the jurisdiction of the United States courts if the legal action is "based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). "Commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* A "commercial activity carried on in the United States by a foreign state" means that the commercial activity being carried out by that state has "substantial contact" with the United States. 28 U.S.C. § 1603(e). The Supreme Court explained that a foreign state engages in commercial activity where it "exercises only those powers that can also be exercised by private citizens" versus "powers peculiar to sovereigns." *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993) (internal citations omitted). Put another way, a foreign state engages in commercial activity if it acts "in the manner of a private player within the market." *Id.* (internal citations omitted).

Contracts for legal services have been found to constitute commercial activity when the claim against the foreign state arose from the state's failure to pay legal fees. *Reichler, Milton & Medel v. Republic of Liberia*, 484 F. Supp. 2d 1, 2 (D.D.C. 2007) (holding that contracts for legal representation in "major lawsuits" brought in United States courts constituted commercial activity under the FSIA). In *Reichler*, the court determined that, "because payment for the legal services was to be made to a banking institution in the United States," the failure to pay

6

"cause[d] a direct effect in the United States" under the FSIA. *Id*. at 2-3 (internal citations omitted). *See also Benetatos v. Hellenic Republic*, Case No. C 06-06819, 2008 U.S. LEXIS Dist. 120588, at *7-9 (N.D. Cal. May 15, 2008) (holding that legal services rendered to foreign state in connection with a dispute over California real estate constituted commercial activity under the FSIA).

The claim for fees in the Counterclaim is similar to the claim in *Reichler*. In retaining Defendants' services for various legal transactions and services in the United States, the Embassy engaged in commercial activity. As a result, the commercial activity exception to immunity under FSIA applies to the narrow extent that the Counterclaim seeks fees for those transactions.

Finally, Section 1607 under the FSIA concerns counterclaims. Section 1607(a) specifically provides that "a foreign state shall not be accorded immunity with respect to any counterclaim . . . for which a foreign state would not be entitled to immunity under section 1605" if the claim were raised "in a separate action against the foreign state." 28 U.S.C. § 1607. The Court has determined that the Embassy would not be entitled to immunity from these claims under the commercial activity exception at Section 1605(a)(2). As such, Section 1607(a) is applicable to Defendants' claim, and the Embassy lacks FSIA immunity from Defendants' Counterclaim.[7]

---

[7] As the applicable sections of the FSIA were not properly asserted in the Counterclaim, Ugwuonye will be given the opportunity to amend the Counterclaim for the narrow purpose of asserting 28 U.S.C. §§ 1605(a)(2) and 1607 as the source of this Court's jurisdiction over the Counterclaim.

### B. Defendant ECU Associates, P.C. conceded to the dismissal of its Counterclaim

Defendant ECU Associates, P.C. did not file an opposition to the Embassy's motion to dismiss the Counterclaim.[8] Under Local Rule 7(b), if an opposing memorandum is not filed, "the Court may treat the motion as conceded." LCvR 7(b). Particularly in light of surrounding circumstances, *see* footnote 8, *supra*, the Court determines that ECU Associates, P.C. conceded to the dismissal of its Counterclaim against the Embassy, and shall grant the Embassy's motion as to ECU Associates, P.C.

### C. The Embassy has not shown that the transactions should be time-barred

The Embassy argues that, even if FSIA immunity does not apply in this case, Ugwuonye's Counterclaim[9] should be dismissed under Federal Rule of Civil Procedure 12(b)(6) as barred by the three-year statute of limitations for contract claims.[10] Pltf.'s Mot. at 9. The Embassy contends that Ugwuonye's Counterclaim is based on events alleged to have occurred more than three years ago. Ugwuonye asserts that the contract with the Embassy was a "continuing contract," such that the statute of limitations would not run until the termination of the contractual relationship.

A defendant (or, in this case, a counter-defendant) "may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint." *DePippo v. Chertoff*, 453 F. Supp. 2d 30, 33 (D.D.C.

---

[8] Defendant Ugwuonye's opposition is very clear that it is only made on his own behalf. Furthermore, Ugwuonye filed a motion near the same time in which he claimed that, as ECU Associates, P.C.'s corporate charter had been forfeited, it lacked the capacity to sue or be sued. Def.'s Mot. to Dismiss or in the Alternative, Motion for Summary Judgment (Dkt. #76).

[9] As only Ugwuonye remains as a Counter-plaintiff at this stage, the Court will refer to the Counterclaim as made by him alone from this point forward (*e.g.*, "Ugwuonye's Counterclaim").

[10] Defendants assert the breach of contract claim "under the laws of the District of Columbia and the State of Maryland." Counterclaim ¶ 17. The statute of limitations for a breach of contract in both the District of Columbia and Maryland is three years. *See* D.C. Code § 12-301(7) (2001); Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2012).

2006) (citing *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)).

However, "[b]ecause statute of limitations issues often depend on contested issues of fact," courts are urged to use caution in dismissing a complaint on statute of limitations grounds "based solely on the face of the complaint." *Id*. (citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)). The court should grant a motion to dismiss based on the statute of limitations only if the complaint is conclusively time-barred on its face. *Id.* That is, the court should dismiss a claim as time-barred only if "'no reasonable person could disagree on the date' on which the cause of action accrued." *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (quoting *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

  The first matter before the Court is to determine whether District of Columbia or Maryland law applies to the breach of contract claim.[11] Both District of Columbia and Maryland choice-of-law rules suggest that the Court should apply District of Columbia law. Under District of Columbia choice-of-law rules, "a contract dispute is controlled by the law of the state with the most substantial interest in the dispute between the parties." *Nattah v. Bush*, 770 F. Supp. 2d 193, 208 (D.D.C. 2011). Meanwhile, Maryland law adheres to the principle of *lex loci contractus*, "which requires that the construction and validity of a contract be determined by the law of the place of making of the contract." *Am. Motorists Ins. Co. v. ARTRA Group*, 659 A.2d 1295, 1300 (Md. 1995); *see also Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 804 n.3 (Md. 2007) (noting Maryland's allegiance to *lex loci contractus*). The District of Columbia has

---

[11] While the Counterclaim alleges that the breach of contract occurred under the laws of the District of Columbia and the state of Maryland, neither party indicates which law should be applicable to the claim. The Embassy references both D.C. and Maryland law in its opening brief; it references D.C. law in its reply brief, but does not indicate whether it is claiming that D.C. law should be applicable as opposed to Maryland law. Ugwuonye's opposition inexplicably references cases from the Eastern District of Pennsylvania and the Third Circuit, which are clearly inapplicable here, and makes no reference to either D.C. or Maryland law.

the most substantial interest in the contract dispute, and is where the contract was formed.[12] Thus, District of Columbia law applies to the breach of contract Counterclaim.

Under District of Columbia law, there are two ways in which Ugwuonye's Counterclaim would survive a statute of limitations defense. First, Ugwuonye's Counterclaim may survive the statute of limitations if Ugwuonye can prove that he had a "continuing contract" with the Embassy. *See generally Griffith v. Butler*, 571 A.2d 1161 (D.C. 1990). District of Columbia law states that "an acknowledgement, or promise, by words only is not sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the statute of limitations . . . unless the acknowledgement, or promise, is in writing, signed by the party chargeable thereby." D.C. Code § 28-3504. Ugwuonye's Counterclaim is unclear about the existence of a writing acknowledging a continuing contract or debt by the Embassy, but it does not need to be clear at the motion to dismiss stage. The facts pleaded in the Counterclaim, taken as true, allege a continuing relationship with the Embassy and the Government of Nigeria that could be interpreted as evincing a continuing contract. As noted above, Ugwuonye need only provide "plausible grounds" that discovery will reveal evidence to support the allegations made in the Counterclaim. *Twombly*, 550 U.S. at 570. He has done so.

Second, the Embassy may be equitably estopped from asserting the statute of limitations as a defense if the Embassy "has 'done anything that would tend to lull the [counter-]plaintiff into inaction and thereby permit the statutory limitation to run against him.'" *Partnership Placements v. Landmark Ins. Co.*, 722 A.2d 837, 842 (D.C. 1998) (quoting *Property 10-F, Inc. v. Pack & Process, Inc.*, 265 A.2d 290, 291 (D.C. 1970)). Such estoppel does not need to be based

---

[12] Ugwuonye states that he maintained offices in both Maryland and the District of Columbia "at various times." Counterclaim ¶ 4. The Embassy is located in the District of Columbia, and has no contacts with the State of Maryland. Ugwuonye also states that "the acts giving rise to this action occurred in the District of Columbia in significant parts thereof," indicating that any contract at issue was formed in the District of Columbia. *Id.* ¶ 18. The contacts with the District of Columbia further suggest that the District of Columbia has the most substantial interest in the contract dispute.

on written evidence. *Brown v. Lamb*, 414 F.2d 1210, 1212 n.2 (D.C. Cir. 1969). A claim that such "lulling" took place raises factual issues as to when the cause of action first accrued. *Cf. Armada De La Republica Argentina v. Yorkington Ltd. P'ship*, Case No. 92-cv-0285, 1995 U.S. Dist. LEXIS 1317, at *25-26 (D.D.C. Jan. 27, 1995) (finding that the factual issues raised as to whether defendant engaged in conduct designed to lull the plaintiff into not bringing suit precluded summary judgment).

Ugwuonye's Counterclaim alleges that, on multiple occasions, the Attorney General of Nigeria assured Ugwuonye that his fees would be paid in the near future. Counterclaim ¶¶ 26-34. Ugwuonye also alleges that he was "encouraged by the Government of Nigeria to build a practice that would be most suited for [the Government of Nigeria's] unique circumstances." *Id.* ¶ 25. He contends that this encouragement "guided [him] in his recruitment of lawyers, and the building of his practice." *Id.* The facts alleged by Ugwuonye, taken as true, raise a question as to whether the Embassy lulled him into a state of inaction, and for what period of time. Ugwuonye has provided "plausible grounds" that discovery will reveal evidence to support his allegations, and dismissing the Counterclaim as time-barred would not be appropriate at this time.

Therefore, it is, hereby **ORDERED:**

1) The Embassy's motion to dismiss Defendant's Counterclaim is **DENIED** as to Defendant Ugwuonye.

2) Within seven (7) days of this Order, Defendant Ugwuonye must file an Amended Answer and Counterclaim that corrects the statement of jurisdiction for the Counterclaim to reflect the Court's determination herein.

3) The Embassy's motion to dismiss Defendants' Counterclaim is **GRANTED** as to Defendant ECU Associates, P.C.

A separate Order will be issued consistent with this opinion.

November 5, 2012

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE