**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EMBASSY OF THE FEDERAL REPUBLIC OF NIGERIA,**<br><br>　　　　　　**Plaintiff,**<br><br>　　　v.<br><br>**EPHRAIM EMEKA UGWUONYE,** *et al.***,**<br><br>　　　　　　**Defendants.** | Civil Action No. 10-cv-1929 (BJR)<br><br>MEMORANDUM OPINION ON MOTION TO SHOW CAUSE AND FOR SANCTIONS AGAINST DEFENDANT UGWUONYE |

This matter is before the Court on a Motion by Plaintiff, the Embassy of the Federal Republic of Nigeria (hereinafter "the Embassy"), to Show Cause and for Sanctions against Defendant Ephraim Emeka Ugwuonye. *See* Dkt. #117. The Embassy requests that, as a result of egregious discovery misconduct by Mr. Ugwuonye, this Court enter a default against Mr. Ugwuonye, dismiss his Counterclaims, and award attorneys' fees to the Embassy for those expenses caused by Ugwuonye's failure to comply with discovery orders. Having reviewed the Embassy's briefs and supporting documents,[1] the Court will grant the Embassy's motion.

**I.    BACKGROUND**

This lawsuit concerns money allegedly owed to the Embassy by Defendant Ugwuonye. Mr. Ugwuonye acted as legal counsel for the Embassy in several real estate transactions, including the sale of a property belonging to the Embassy that was located at 2201 M Street NW in Washington, DC (hereinafter "the property"). Am. Compl. (Dkt. #33) ¶ 12; Am. Answer (Dkt. #106) ¶ 12. The Embassy agreed to pay Mr. Ugwuonye and his firm, co-Defendant ECU Associates, P.C., the equivalent of 3.5% of the sale price of the property as complete payment for

---

[1]  Mr. Ugwuonye failed to file an opposition brief. The Court notes that, pursuant to Local Rule 7(b), the Court could treat the Embassy's motion as conceded. LCvR 7(b). However, in light of the significant impact the granting of this motion has on the case, the Court will consider the motion on its merits.

their legal services in connection with the sale of the property.  Am. Compl. ¶ 13; Am. Answer ¶ 13.  Mr. Ugwuonye admits that the Embassy paid him and his firm in full for those services.  Am. Answer ¶ 15.

The Embassy alleges that the Internal Revenue Service ("IRS") withheld property taxes in the amount of $1.55 million upon the sale of the property because Mr. Ugwuonye failed to file the necessary paperwork exempting a foreign sovereign from property taxes.  Am. Compl. ¶ 17.  The Embassy retained Mr. Ugwuonye and his firm to file the necessary paperwork with the IRS to obtain a refund of the $1.55 million tax lien, and to deliver those funds to the Embassy.  Am. Compl. ¶ 18; Am. Answer ¶ 18.  The engagement agreement stated that Mr. Ugwuonye would be entitled to 5% of any amount recovered on behalf of the Embassy.  *Id.* [2]  In November 2007, Mr. Ugwuonye received the $1.55 million refund from the IRS, and deposited the funds into an account in the name of ECU Associates.  Am. Compl. ¶ 19; Am. Answer ¶ 19.  The Embassy alleges that Mr. Ugwuonye claimed as late as December 12, 2007 that the check from the IRS had not yet cleared.  Am. Compl. ¶ 20.

The Embassy claims that, in December 2007, Mr. Ugwuonye withdrew $550,000 in funds without explanation.  *Id.* ¶ 19.  The Embassy further asserts that Mr. Ugwuonye has continued to withdraw funds from the accounts periodically, and that, as of May 2008, the account balance was $195.65.  *Id.* ¶¶ 22-23.  The Embassy contends that it has never received any of the funds related to the tax refund.  *Id.* ¶ 1.

Mr. Ugwuonye filed a Counterclaim against the Embassy.[3]  Mr. Ugwuonye claims that he acted as counsel to the Government of Nigeria and the Embassy in a variety of matters from

---

[2]   That is, if the full refund were obtained, Mr. Ugwuonye would be entitled to $77,500 in fees.

[3]   Mr. Ugwuonye also filed a Cross-Complaint against the "Federal Republic of Nigeria and Ambassador Adebowale Adefuye," which is essentially identical to his Counterclaim against the Embassy.  *See* Am. Counterclaim (Dkt. #106).  The Court will refer to Mr. Ugwuonye's Counterclaim and Cross-Complaints collectively as his "Counterclaims."

2001 until 2008. Am. Counterclaim ¶ 16-20. Mr. Ugwuonye alleges that the Embassy failed to pay him his fees in full, and that the Embassy continues to owe him past fees. *Id.* ¶¶ 24, 29. Mr. Ugwuonye claims that he discussed applying the tax refund to his outstanding fees with the Attorney General of Nigeria in January 2008. *Id.* ¶ 30. Mr. Ugwuonye demands "compensatory and punitive damages in excess of" $3 million. *Id.* ¶ 44.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37 provides for a range of sanctions related to a party's failure to make disclosures or cooperate during discovery. Fed. R. Civ. P. 37. Rule 37 authorizes sanctions in a variety of circumstances, two of which are relevant in this case.

Under Rule 37(b), the Court may impose sanctions when a party "fails to obey an order to provide or permit discovery," including an order on a motion to compel. Fed. R. Civ. P. 37(b)(2)(A). The plain language of Rule 37(b) requires the moving party to demonstrate that (1) there is a discovery order in place, and (2) that the discovery order was violated. *D.L. v. D.C.*, 274 F.R.D. 320, 325 (D.D.C. 2011). If these requirements are met, Rule 37(b) allows for several specific forms of sanctions, including dismissal of the action or rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A).[4] The Rule also provides that, in addition to or instead of the sanctions available under subsection (A), the Court "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Under Rule 37(d), the Court may impose sanctions for a party's failure to appear for a deposition after being served with proper notice. Fed. R. Civ. P. 37(d)(1)(A)(i). The sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vii). Fed. R. Civ. P. 37(d)(3). As

---

[4]   The Rule's list of possible sanctions is not exclusive or exhaustive. *See D.L.*, 274 F.R.D. at 325.

with Rule 37(b), under Rule 37(d), instead of or in addition to the listed sanctions, the Court "must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.*

The District Court has broad discretion concerning sanctions for discovery violations under Rule 37. *Bonds v. D.C.*, 93 F.3d 801, 807 (D.C. Cir. 1996). Rule 37's "central requirement" is that "any sanction must be just." *Id.* at 808 (internal citations omitted). The Court's choice of sanction must be guided by a sense of proportionality between the offense and the sanction. *Id.* Default judgment should be a "sanction of last resort," used only when "less onerous methods" would be obviously futile or ineffective. *Webb v. D.C.*, 146 F.3d 964, 971 (D.C. Cir. 1998). However, the district court is not required to exhaust lesser sanctions before turning to default. *Id.*

## III.   ANALYSIS

### A.   Sanctions are appropriate under Rule 37(b)

Sanctions are appropriate under Rule 37(b) in light of Mr. Ugwuonye's failure to obey this Court's October 17, 2012 Order granting the Embassy's motion to compel and for sanctions. *See* Order on Mot. to Compel (Dkt. #91). This Court's Order required Mr. Ugwuonye to respond to the Embassy's discovery requests within fourteen days of the entry of the Order, *i.e.*, no later than October 31, 2012. *Id.* at 6. The Order also alerted Mr. Ugwuonye that any objections he may have had to the Embassy's discovery requests had been waived by his failure to assert them in a timely manner. *Id.*

Under Rule 37(b), an order on a motion to compel, issued in accordance with Rule 37(a), is an order for which sanctions may be available if a party fails to comply with the order. Fed. R. Civ. P. 37(b). According to the Embassy's motion, Mr. Ugwuonye failed to comply with this

4

Court's Order.[5] The Embassy states that Mr. Ugwuonye did not respond to the Embassy's interrogatories under December 11, 2012—nearly six weeks after the original Court-ordered deadline.[6] Mot. at 2. Furthermore, Mr. Ugwuonye asserted objections to the Embassy's interrogatories, despite the fact that the Court ordered that he had waived any objections by failing to respond in a timely manner. *Id.*; Mot. Exh. B (Defendant Ugwuonye's Responses to Plaintiff's First Set of Interrogatories).

The Embassy further states that Mr. Ugwuonye failed to produce any documents to the Embassy until December 11, 2012, at which time he produced only 401 pages of documents in response to 85 requests for production. *Id.* at 3; Mot. Exh. A at 9-23 (Plaintiff's Requests for Production). Mr. Ugwuonye contacted the Embassy on January 7, 2013, to inform the Embassy that he discovered additional documents that he believed were "within the type of documents [the Embassy] requested in discovery," including documents concerning property of the Embassy in located in San Francisco and documents related to payment of services for "the case in New York." Mot. Exh. C. He informed the Embassy that he would send the documents that week. *Id.* As of the filing of the Embassy's motion on March 11, 2013, no such documents had been received. Mot. at 3.

In light of Mr. Ugwuonye's failure to comply with the Court's Order on the Embassy's motion to compel, the Court determines that sanctions are appropriate under Rule 37(b).

**B.     Sanctions are appropriate under Rule 37(d)**

On April 12, 2013, the Embassy filed a supplemental memorandum in further support of its motion, explaining that, in violation of Federal Rule of Civil Procedure 30, Mr. Ugwuonye

---

[5]   As Mr. Ugwuonye failed to file an opposition to the Embassy's motion, the Court finds that he has conceded to the facts asserted by the Embassy as true. LCvR 7(b).

[6]   The Court had twice granted motions by Mr. Ugwuonye to extend the deadline; the last deadline set was December 8, 2012. *See* Minute Order of Dec. 3, 2012.

failed to appear for a scheduled deposition on April 11, 2013 at 9:00 A.M.  Supp. Mem. (Dkt. #122) at 1.  The Embassy explained that, on March 13, 2013, it served Mr. Ugwuonye with notice of the deposition by both e-mail and first class mail. *Id.*; Supp. Mem. Exh. A.  The Embassy states that Mr. Ugwuonye did not object to the timing or location of the deposition, and did not contact the Embassy's counsel at any point to suggest rescheduling the deposition.  *Id.* at 1-2.  The transcript of the deposition reflects that the Embassy's counsel waited over an hour, and received no notice from Mr. Ugwuonye at any time that he would not appear for the deposition.  Supp. Mem. Exh. B, Tr. 3:21-4:4.

As discussed above, the Court may impose sanctions under Rule 37(d) if a party fails to appear for a deposition after the party has been served with proper notice for that deposition.  Therefore, in light of Mr. Ugwuonye's failure to appear for his scheduled deposition, the Court finds that sanctions under Rule 37(d) are appropriate.

    **C.**    **Entry of default and dismissal of Defendant's Counterclaims are appropriate sanctions**

Having determined that Rule 37 discovery sanctions against Mr. Ugwuonye are appropriate, the Court must determine whether entry of default against Mr. Ugwuonye and dismissal of his Counterclaims are appropriate sanctions.  As noted above, default and dismissal are considered sanctions of last resort, not to be taken lightly.  *See Webb*, 146 F.3d at 971.  However, in light of Mr. Ugwuonye's behavior throughout the course of this case, and the failure of earlier efforts to sanction such behavior, the Court determines that these sanctions are appropriate.

The D.C. Circuit has articulated three basic justifications to support the use of dismissal or default as a sanction for misconduct.  *Id.*  First, such sanctions may be justified if the Court determines that the ability of the non-offending party to present or defend its case has been severely prejudiced by the actions of the party to be sanctioned.  *Id.*; *see also D.L.*, 274 F.R.D. at

6

325. Second, the Court may consider whether the party's misconduct has put "an intolerable burden" on the Court by requiring it to modify its own docket and operations in order to accommodate the party's delays. *Id.* Finally, the Court may consider the need "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Id.* (quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1077 (D.C. Cir. 1986)).

> *1.    The Embassy's ability to present its case against Defendant Ugwuonye and to defend itself against Mr. Ugwuonye's Counterclaims has been severely hampered*

As to the first justification, there is no question that Mr. Ugwuonye's failure to comply with discovery has prejudiced the ability of the Embassy both to present its own case and to defend itself against Mr. Ugwuonye's Counterclaims. For instance, according to the Embassy, Mr. Ugwuonye's interrogatory responses failed to identify any specific person with the Embassy who allegedly authorized him to retain the tax refund intended for the Embassy, instead identifying two non-Embassy officials and "[t]he Embassy of Nigeria, via discussions and the retainer agreement." Mot. at 5; Mot. Exh. B at 1-2. Mr. Ugwuonye failed to describe specific communications he had with the Embassy or Government of Nigeria, stating broadly that he communicates on a regular basis, "as often as 5 times a week," with various officials. Mot. Exh. B at 3.

In Interrogatory No. 10, the Embassy requested that Mr. Ugwuonye identify all bank accounts he had held, either directly or indirectly, since the year 2000, including account numbers. Mot. Exh. B at 5. Mr. Ugwuonye identified two bank accounts, both held by co-Defendant ECU Associates, and failed to provide the number for one of them, stating in a footnote that he would make the number available to the Embassy's counsel within 48 hours. *Id.* The Embassy states that he never did so. Mot. at 7. Furthermore, in response to the Embassy's Interrogatory No. 12, asking Mr. Ugwuonye to describe every fact upon which he relied for each

7

of the defenses he asserted in his Answer and Counterclaim, Mr. Ugwuonye responded, "I shall rely on the documents produced pursuant to discovery, my answers herein, my complaint and communications with the Embassy of Nigeria and the officials of Nigeria and all else involved in justifying any defenses asserted in my Counterclaim." Mot. Exh. B at 6.

As noted above, the Embassy states that Mr. Ugwuonye has provided the Embassy with only 401 pages of documents in response to the Embassy's requests for production. Mot. at 3. The Embassy states that Mr. Ugwuonye failed to provide any engagements or contracts related to the various services for which he seeks payment. *Id.* at 8. He produced only two "detailed billing statements," for the period December 2006 – April 2007, both of which related to the same single case. *Id.* He produced only one invoice to the Embassy, which was for $30,000 and contained no information concerning what services were covered. *Id.* at 9. He provided no documents reflecting how much he has been paid by the Embassy or the Government of Nigeria in the past. *Id.* He provided none of his tax returns or related documents, nor any copies of advertising materials, both of which are relevant to the Embassy's claim that Mr. Ugwuonye had a partnership with Defendant Fein. *Id.* at 10.

In short, Mr. Ugwuonye's participation in the discovery process has been woefully insufficient. The Embassy cannot possibly build its case against Mr. Ugwuonye, nor defend itself from his Counterclaims, on the basis of the paltry discovery he has provided. In failing to respond to the Embassy's discovery requests, Mr. Ugwuonye has violated this Court's Order and crippled the Embassy's case. This prejudice to the Embassy justifies an entry of default against Mr. Ugwuonye and dismissal of his Counterclaims is an appropriate sanction.

> 2.   *Mr. Ugwuonye's actions burdened the Court by requiring it to modify its own docket and operations in order to accommodate his delays*

Mr. Ugwuonye's dilatory actions throughout this case have placed a significant burden on this Court. Thus far, the Court has been exceedingly patient and accommodating with Mr.

Ugwuonye. The Court took him at his word that, due to circumstances beyond his control, he was unable to meet a number of case deadlines.[7] As a result, in the last year, this Court has granted Mr. Ugwuonye leave to file responses out of time on a number of occasions. *See* Dkt. #91 (granting motion for leave to file opposition to motion to compel out of time); Dkt. #103 (granting motion for extension of time to comply with Order on the motion to compel and to amend Counterclaims), Minute Order of Dec. 3, 2012 (further extending the deadline to comply with discovery and amend Counterclaims); Minute Order of Feb. 13, 2013 (granting motion for leave to file opposition to motion to disqualify as counsel).

The Court, however, has had enough. Mr. Ugwuonye has made no effort to respond to the Embassy's motion to enter default against him and dismiss his Counterclaims. Discovery closed on March 15, 2013. *See* Order of Jun. 26, 2012 at 2. There is no indication that Mr. Ugwuonye has been in Nigeria this entire time.[8] The Court will no longer manipulate the schedule of this case for Mr. Ugwuonye's benefit. Mr. Ugwuonye's significant delays justify the entry of default against him and dismissal of his Counterclaims.

### 3. *The Court must sanction conduct that is disrespectful to the Court and deter similar misconduct in the future*

As noted above, the Court has been exceedingly patient with Mr. Ugwuonye. In response, however, Mr. Ugwuonye's flagrant disregard for the discovery process and the Court's scheduling order shows little respect for this Court's time and efforts. The Court imposed past

---

[7] Mr. Ugwuonye represented to the Court that he had to return to Nigeria on several occasions to defend himself in criminal actions filed by the Government of Nigeria based on his alleged retention of the tax refund. *See* Tr. of Jun. 25, 2012 Status Hearing 10:11-12:9. He also stated that at one point he was detained by the Nigerian police for an extended period of time. *Id.* 12:1-3. Furthermore, he represented that he lacked consistent electricity and Internet access in Nigeria, making remote filing difficult. *See* Defendant Ugwuonye's Motion for Extension of Time (Dkt. #97) at 2-3.

[8] In fact, the Court is certain that Mr. Ugwuonye was in the country as of April 25, 2013, because he called into a telephone conference held that day concerning a discovery matter between the Embassy and Defendant Fein. *See* Minute Entry of Apr. 25, 2013.

sanctions on Mr. Ugwuonye. The Court granted the Embassy's motion to compel, and assessed costs against Mr. Ugwuonye under Rule 37(a)(5). *See* Order on Mot. to Compel; Order Resolving Plaintiff's Bill of Costs (Dkt. #130). Such sanctions were clearly not a sufficient deterrent. The disrespect Mr. Ugwuonye has shown for his discovery obligations and the Orders of this Court show that further Court Orders would be unlikely to deter future misconduct. Furthermore, the sanctions that the Court could otherwise consider against Mr. Ugwuonye at this point would largely consist of prohibiting him from presenting evidence supporting his defenses and Counterclaims to such a degree that the result would merely be an entry of default and dismissal of his Counterclaims by another name.

Mr. Ugwuonye is an experienced attorney representing himself *pro se*, who has been fully aware that his actions were not in accordance with the Federal Rules and this Court's Orders. *See Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 263 (D.D.C. 2009). In light of the need to sanction Mr. Ugwuonye's disrespectful conduct and to prevent future misconduct in this case, the sanction of an entry of default and dismissal of his Counterclaims is justified.

    **D.**    **An award of attorneys' fees is appropriate**

Pursuant to Rules 37(b)(2)(C) and 37(d)(3), in addition to the sanctions of entry of default and dismissal of Mr. Ugwuonye's Counterclaims, the Court will require Mr. Ugwuonye to pay reasonable expenses, including attorneys' fees, caused by Mr. Ugwuonye's failure to comply with this Court's order on the motion to compel and failure to appear at his deposition.

    **E.**    **Mr. Ugwuonye must be served with notice, and the Embassy must submit an affidavit showing the amount of damages due**

While the Embassy's Proposed Order sets forth its requested damages, it has not provided sufficient documentary support for those damages. Furthermore, Mr. Ugwuonye must be served with notice of the Embassy's application for default judgment.

If a default judgment is for a sum certain, or a sum that can be made certain by computation, the Clerk of Court may enter the default judgment if the defendant has not appeared in the case. Fed. R. Civ. P. 55(b)(1). In all other cases, however, the party must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2). Furthermore, under Rule 55(b)(2), if a party against whom a default judgment is sought has appeared personally or by a representative, that party must be served with written notice of the application for default judgment at least seven (7) days before any hearing on damages. Fed. R. Civ. P. 55(b)(2).

The Embassy's requested damages consist of the tax refund and pre- and post-judgment interest, which are easily calculated. Mr. Ugwuonye has appeared in this case, however, and the Rule clearly requires that he receive notice before the default judgment is entered. Therefore, the Court will require the Embassy to serve Mr. Ugwuonye with such notice.

Furthermore, while the Embassy's requested damages are clear, the supporting documentation is not. Rule 55(b) requires the Embassy to file "an affidavit showing the amount due." Fed. R. Civ. P. 55(b)(1). The Proposed Order is not sufficient. The Embassy must file an affidavit for damages in conjunction with its application for default judgment.

**THEREFORE**, it is, hereby **ORDERED:**

1) The Embassy's motion is **GRANTED**;

2) The Clerk of Court shall enter a default against Mr. Ugwuonye as to the Embassy's claims;

3) Mr. Ugwuonye's Counterclaim and Cross-Claims are **DISMISSED**;

4) The Embassy shall file its motion for default judgment, including an affidavit for damages, no later than May 28, 2013, and shall serve Mr. Ugwuonye with notice of its application by the same date;

5) The Embassy is awarded its attorneys' fees and costs pursuant to Rule 37(b)(2)(C) and 37(d)(3), and shall submit a Bill of Costs setting forth those expenses and attorneys' fees caused by Mr. Ugwuonye's failure to comply with this Court's Order on the motion to compel and his failure to appear for his deposition, no later than May 28, 2013; and,

6) A hearing on damages is set for June 10, 2013, at 10:00 A.M., in Courtroom 12 of the Prettyman Courthouse.

**SO ORDERED** this 20th day of May 2013.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE