**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EMBASSY OF THE FEDERAL REPUBLIC OF NIGERIA,**<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>**EPHRAIM EMEKA UGWUONYE,** *et al.***,**<br><br>　　　　　　Defendants. | Civil Action No. 10-cv-1929 (BJR)<br><br>MEMORANDUM OPINION ENTERING DEFAULT JUDGMENT AGAINST ECU ASSOCIATES, P.C. |

　　　　This matter is before the Court on a motion for default judgment brought by Plaintiff, the Embassy of the Federal Republic of Nigeria (hereinafter "the Embassy"). *See* Mot. for Default Judgment as to ECU Associates, P.C. (Dkt. #129). On April 23, 2013, this Court granted a motion for an entry of default against Defendant ECU Associates, P.C. (hereinafter "ECU Associates") for failure to defend in this action. *See* Order Granting Cross-Mot. for Entry of Default (Dkt. #125).[1] The Embassy has now filed its motion for default judgment setting forth its requested damages. Having reviewed the documents filed in support of the Embassy's motion, the Court GRANTS it in part and DENIES it in part, and enters default judgment against ECU Associates.

**I.　　BACKGROUND**

　　　　This lawsuit concerns claims by the Embassy against ECU Associates for breach of contract, breach of the implied covenant of good faith, breach of fiduciary duty, conversion, and unjust enrichment.[2] Am. Compl. (Dkt. #33) ¶¶ 52-110. ECU Associates, a Maryland

---

[1]　　The Clerk of Court entered the default on April 24, 2013. *See* Clerk's Entry of Default (Dkt. #126).

[2]　　The Embassy also seeks that a constructive trust be placed on funds equal to the amount that Defendants wrongfully retained, and that a declaratory judgment be entered, including a declaration that the Embassy is entitled to the tax refund of $1.55 million, plus interest, and a declaration that Defendants are not entitled to withhold the tax refund from the Embassy for any reason. Am. Compl.

professional corporation, along Defendant Ugwuonye,[3] acted as legal counsel for the Embassy in several real estate transactions, including the sale of a property belonging to the Embassy that was located at 2201 M Street NW in Washington, DC (hereinafter "the property"). Am. Compl. (Dkt. #33) ¶¶ 6, 12; Answer (Dkt. #44) ¶¶ 6, 12. The Embassy agreed to pay ECU Associates and Defendant Ugwuonye the equivalent of 3.5% of the sale price of the property as complete payment for their legal services in connection with the sale of the property. Am. Compl. ¶ 13; Answer ¶ 13. ECU Associates admitted that the Embassy paid it in full for those services. Answer ¶ 15.

When ECU Associates failed to file the necessary paperwork exempting a foreign sovereign from property taxes, the Internal Revenue Service ("IRS") withheld property taxes in the amount of $1.55 million upon the sale of the property. Am. Compl. ¶ 17. The Embassy retained ECU Associates and Defendant Ugwuonye to file the necessary paperwork with the IRS and obtain a refund of the $1.55 million tax lien, and to deliver the tax refund to the Embassy. Am. Compl. ¶ 18; Answer ¶ 18. In November 2007, Defendant Ugwuonye received the $1.55 million refund from the IRS, and deposited the funds into an account in the name of ECU Associates. Am. Compl. ¶ 19; Answer ¶ 19.

The Embassy claims that, in December 2007, Ugwuonye withdrew $550,000 in funds without explanation. *Id.* ¶ 19. The Embassy further asserts that Ugwuonye has continued to withdraw funds from the accounts periodically, and that, as of May 2008, the account balance

---

¶¶ 111-126. This Court's entry of default effectively found ECU Associates liable on all claims, and provided the requested equitable relief. *See Flynn v. Old World Plaster, LLC*, 741 F. Supp. 2d 268, 269-70 (D.D.C. 2010) (noting that default establishes the defaulting party's liability for the well-pleaded allegations of the complaint).

[3] Co-Defendant Ephraim Emeka Ugwuonye has indicated that he is the founder and President of ECU Associates, P.C. *See* Defendants' Mot. to Dismiss or in the Alternative, Mot. for Summary Judgment, Affidavit of Ephraim Emeka Ugwuonye (Dkt. #76-1) ¶ 1.

was $195.65.  *Id.* ¶¶ 22-23.  ECU Associates has not returned the Embassy's $1.55 million tax refund.  Am. Compl. ¶ 40; Answer ¶ 40.

On November 9, 2010, the Embassy filed its Complaint in this action.  *See* Dkt. #1.  The Complaint was served upon Defendant Ugwuonye in his personal capacity (Dkt. #2) and as a "partner" [*sic*] in ECU Associates, P.C. (Dkt. #5).  On January 6, 2011, Donald M. Temple filed a Notice of Appearance (Dkt. #12) on behalf of "Emeka Ephraim Ugwuonye, *et al.*"  The following day, Attorney Temple filed an Errata (Dkt. #14) clarifying that he was representing Ugwuonye, "ECU Law Group, and ECU Associates, P.C."[4]  On January 31, 2011, Defendants Ugwuonye, ECU Associates, and ECU Law Group filed a motion to dismiss (Dkt. #18).  Judge Henry Kennedy, who presided over this case originally, denied that motion as moot on July 15, 2011, in light of the Amended Complaint filed by the Embassy.  Minute Order of Jul. 15, 2011.  On August 29, 2011, Defendants filed a motion for leave to file an Answer and Counterclaim out of time (Dkt. #40) in response to the Embassy's Amended Complaint; that motion was granted on October 6, 2011.  Minute Order of Oct. 6, 2011.  The Answer and Counterclaim were filed on that date and designated as being "By Defendants Ephraim Emeka Ugwuonye and ECU Associates, P.C."  Answer at 1.

On October 8, 2011, Donald M. Temple filed a motion to withdraw as attorney, which was granted by this Court on April 19, 2012.  *See* Consent Motion to Withdraw as Attorney (Dkt. #45); Minute Order of Apr. 19, 2012.[5]  Since that time, Defendant Ugwuonye has appeared *pro se*.  ECU Associates, P.C. has not filed any documents since the Answer and Counterclaim filed on October 6, 2011.

---

[4]   This Court denied the Embassy's motion for default against Defendant ECU Law Group, because questions of fact exist as to whether the partnership known as ECU Law Group exists in fact.  *See* Mem. Op. of Nov. 2, 2012 (Dkt. #96) at 13.

[5]   Judge Kennedy retired in November 2011, and this case was reassigned to the undersigned judge on April 3, 2012.  *See* Dkt. #47.

On June 25, 2012, counsel for the Plaintiff, counsel for Defendant Bruce Fein, and Defendant Ugwuonye (*pro se*) appeared before this Court for a Status Hearing. *See* Tr. 2:7-12 (Dkt. #94). Defendant Ugwuonye stated that he was appearing "for the ECU entities as well," but indicated that his law firm, ECU Associates, had closed. Tr. 2:12-24. The Court granted Defendant Ugwuonye leave to file a motion to dismiss ECU Associates and ECU Law Group, and permitted the Embassy to file a cross-motion for default judgment in response. *See* Order of June 26, 2012 (Dkt. #70).

In his motion to dismiss, Ugwuonye argued that ECU Associates, P.C. lacked the capacity to sue or be sued, because the corporation had forfeited its charter. *See* Defendants' Mot. to Dismiss or in the Alternative, Mot. for Summary Judgment (Dkt. #76) at 1. The Embassy argued that ECU Associates was in default for failing to appear or otherwise defend itself. *See* Plaintiff's Cross-Mot. for Default Judgment (Dkt. #77) at 3-4. This Court held that, under Maryland law, a corporation can be sued in its own name even after the charter was forfeited when "necessary and proper to liquidate the corporation and wind up its affairs." Mem. Op. of Nov. 2, 2012 at 6 (quoting Md. Code Ann., Corps. & Ass'ns § 3-515(c)(3)-(4)). The Court also informed Defendants that, while Defendant Ugwuonye can appear *pro se* in his personal capacity, he cannot do so as the director-trustee of ECU Associates. *Id.* at 7. Therefore, the Court deferred ruling on the Embassy's motion for default against ECU Associates to provide Ugwuonye, as director-trustee, the opportunity to seek out counsel for ECU Associates. *Id.* at 12.

Defendant Ugwuonye entered an appearance as counsel for ECU Associates on December 10, 2012. *See* Notice of Appearance (Dkt. #108). The Embassy filed a motion to disqualify Ugwuonye as counsel for ECU Associates on January 9, 2013. *See* Plaintiff's Mot. to Disqualify Defendant Ugwuonye as Counsel for Defendant ECU Associates, P.C. (Dkt. #110).

4

The Court granted leave to Ugwuonye to file an opposition to the motion out-of-time. *See* Minute Order of Feb. 13, 2013. Nonetheless, Ugwuonye failed to file an opposition, and the Court granted the Embassy's motion, noting that it raised very strong arguments as to whether Ugwuonye was qualified to represent ECU Associates under the District of Columbia Rules of Professional Responsibility. Order Granting Motion to Disqualify Counsel (Dkt. #115) at 1-2.

The Court ordered Ugwuonye to retain counsel for ECU Associates within two weeks, or the Court would enter default against it. *Id.* at 2. No counsel appeared for ECU Associates, and on April 23, 2013, this Court granted the Embassy's motion for default against ECU Associates. *See* Order Granting Cross-Mot. for Entry of Default at 4. As the original motion for default judgment did not include sufficient supporting documentation for the Court to calculate appropriate damages, the Court ordered the Embassy to file a renewed motion for default judgment. *Id.* On May 7, 2013, the Embassy filed its motion. *See* Mot. for Default Judgment as to ECU Associates, P.C. No opposition to the motion has been filed, despite the Embassy serving the motion on both ECU Associates, P.C. and Defendant Ugwuonye. *See id.*, Certificate of Service (Dkt. #129-3).

## II.   LEGAL STANDARD

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. First, a plaintiff must request that the Clerk of the Court enter a default against the party who has "failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Once default has been entered, the plaintiff may move for default judgment. Fed. R. Civ. P. 55(b).

While default establishes the defaulting party's liability for the well-pleaded allegations of the complaint, it does not establish the amount of damage for which a defendant is liable. *Flynn,* 741 F. Supp. 2d at 269-70. Unless a plaintiff's claim can be made certain by computation, as evidenced by an affidavit showing the amount due, the plaintiff seeking a default

5

judgment must apply to the Court. Fed. R. Civ. P. 55(b). A court may conduct a hearing, but is not required to do so if it ensures that there is a basis for the damages specified in the default judgment. *Flynn*, 741 F. Supp. 2d at 270 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). If a default judgment is sought against a defendant who has appeared personally or by a representative, that defendant or its representative must be served with written notice of the application at least seven days before any hearing on damages. Fed. R. Civ. P. 55(b)(2).

### III. ANALYSIS

Having reviewed the Embassy's motion, the Court has determined that a hearing will be unnecessary, as there is a clear basis for the damages that will be awarded to the Embassy. Since ECU Associates was served with notice of the Embassy's motion nearly a month ago, the notification requirements of Rule 55(b)(2) have been satisfied.

#### A. Compensatory Damages

The Embassy requests compensatory damages in the amount of $1.55 million. "Compensatory damages make plaintiffs whole for the harms that they have suffered as a result of defendants' actions." *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996) (citing Restatement (Second) of Torts § 903, cmt. a (1977)).

The facts of this case are clear. The Embassy engaged ECU Associates to obtain a refund from the IRS of $1.55 million. *See* Decl. of Ambassador Adebowale Ibidapo Adefuye ("Decl.") (Dkt. #129-1) ¶ 8 and Attachment ("Att.") 1. On November 16, 2007, the IRS issued a refund check in the amount of $1.55 million to the "Embassy of Nigeria c/o ECU Associates, PC." *Id.* ¶ 9 and Att. 2. ECU Associates did not deliver the funds to the Embassy. *Id.* ¶ 13. Instead, ECU Associates withheld the funds and refused to deliver them, notwithstanding the Embassy's

subsequent demands. *Id.* ¶¶ 16-19, 23 and Atts. 5-7. ECU Associates has not delivered any portion of the $1.55 million tax refund to the Embassy. *Id.* ¶ 23; Am. Answer ¶ 40.

As the Court has determined that ECU Associates is liable on all counts, it is appropriate for the Court to order ECU Associates to pay compensatory damages equal to the pecuniary harm the Embassy suffered as a result of ECU Associates' actions. Therefore, the Court will award compensatory damages in the amount of $1.55 million.

### B. Prejudgment Interest

The Embassy requests prejudgment interest on the $1.55 million owed to it by ECU Associates, accruing as of November 20, 2007, the date on which ECU Associates deposited the funds into its account. *See* Decl. ¶ 10 and Att. 3; *see also* Answer ¶ 19. The Embassy proposes that interest be calculated at a statutory rate of 6% per annum, or $254.79 per day, from November 20, 2007 until the date this Court enters a default judgment against ECU Associates.

As a general matter, "[p]rejudgment interest serves to compensate for the loss of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'" *West Virginia v. United States*, 479 U.S. 305, 310-11 n.2 (1987). A federal court sitting in diversity must look to local law to determine whether prejudgment interest is available. *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 855 (D.C. Cir. 1981). In the District of Columbia, an injured party in an action sounding in tort may recover prejudgment interest "to the extent that it will make the injured party whole." *Duggan v. Keto*, 554 A.2d 1126, 1140 (D.C. 1989); *see also* D.C. Code § 15-109 (2012). Where a plaintiff has been deprived of the use of money that has been withheld, prejudgment interest "is an element of complete compensation for the loss of use of such money." *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1253 (D.C. 1990).

Under this Court's entry of default, ECU Associates is liable for the Embassy's tort claims of conversion and unjust enrichment. The Embassy has been deprived of the $1.55 million for five and a half years, a substantial amount of money which could have, according to the Embassy, been used "to promote Nigeria interests in the United States, maintain the Embassy's building and facilities, pay the salaries of the Nigerian and U.S. citizens who work in its Embassy, or support its operations or other needs." Decl. ¶ 22. Prejudgment interest is necessary to fully compensate the Embassy for the losses it has suffered as a result of ECU Associates' misconduct. Therefore, the Embassy is entitled to prejudgment interest.[6]

As there is no contractually-specified rate of interest to apply to the debt, the Embassy is entitled to the statutory rate of 6% per annum provided by D.C. Code § 28-3302(a). *See Pierce Assocs.*, 527 A.2d at 310. Therefore, the Embassy is awarded prejudgment interest at the rate of 6% per annum commencing on November 20, 2007, the date that the tax refund was deposited into the ECU Associates account. *See* Decl. ¶ 10 and Att. 3; *see also* Answer ¶ 19. As of today, May 22, 2013, that amount is $512,136.99.

### C.   Post-Judgment Interest

The Embassy requests post-judgment interest from the date of this judgment until the judgment is paid in accordance with 28 U.S.C. § 1961. Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Therefore, post-judgment interest is awarded in this case, to be calculated according to the rate set forth in 28 U.S.C. § 1961.

---

[6] The Court would reach the same conclusion under the Embassy's contract claims, as the $1.55 million is a liquidated debt upon which interest should be payable under usual circumstances. *See* D.C. Code § 15-108 (mandating prejudgment interest be paid on liquidated debts upon which interest is payable by "usage"); *Riggs*, 581 A.2d at 1254-55 (defining a "liquidated debt" as one that "at the time it arose . . . was an easily ascertainable sum certain" and "usage" as "what is customary or usual under similar or comparable circumstances.") (citations omitted); *see also District of Columbia v. Pierce Assocs., Inc.*, 527 A.2d 306, 312 (D.C. 1987) (awarding prejudgment interest under Section 15-108 for a liquidated debt in a breach of contract case).

### D. Punitive Damages

The Embassy requests punitive damages in the amount of two times the compensatory damages. Mot. for Default Judgment as to ECU Associates, P.C. at 10, 15. The Court denies this request.

Under District of Columbia law,[7] punitive damages are normally only available in actions arising from intentional torts. *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 108 (D.D.C. 2004). "The basic purpose of punitive damages is to deter and punish." *Id.* To recover punitive damages on an intentional tort, a plaintiff must establish that the tortious act was committed with "an evil motive, actual malice, deliberate violence or oppression" or in support of "outrageous conduct in willful disregard of another's rights." *Id.* (quoting *Robinson v. Sarisky*, 535 A.2d 901, 906 (D.C. 1988) (internal citations omitted)). Punitive damages are generally not recoverable in the District of Columbia for breach of contract, except "in certain narrowly defined circumstances, where breach of contract merges with, and assumes the character of, a willful tort." *Id.* (quoting *Den v. Den*, 222 A.2d 647, 648 (D.C. 1966)).

Given the posture of this case, the Court finds that the award of punitive damages would be improper. The Embassy has not established the requisite "actual malice" to award punitive damages. Therefore, the Embassy's request for punitive damages will be denied.

### E. Attorneys' Fees

The Embassy made references to seeking attorneys' fees in its motion, but did not actually request said fees. The Embassy may file its motion for attorneys' fees sought from ECU

---

[7] This Court has previously determined that District of Columbia law is applicable to the Embassy's breach of contract claim. *See* Mem. Op. Granting in Part and Denying in Part Mot. to Dismiss Counterclaim (Dkt. #99) at 10. As to the tort claims, as the Embassy assumes that District of Columbia law governs those claims, ECU Associates does not contest that assumption, and that assumption appears to be consistent with the District of Columbia's choice of law rules, the Court will apply District of Columbia law to the Embassy's tort claims as well. *See Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 248 n.15 (D.D.C. 2011)

Associates. The Embassy must provide a memorandum setting forth why it is entitled to such fees, along with sufficient documentation to support that requested fees are reasonable.

**THEREFORE**, it is, hereby, **ORDERED:**

1) The Embassy's motion for default judgment against ECU Associates, P.C. is **GRANTED** as to compensatory damages, prejudgment interest, and post-judgment interest;

2) The Embassy's motion is **DENIED** as to punitive damages;

3) The Embassy is entitled to $1.55 million in compensatory damages, $512,136.99 in prejudgment interest, and post-judgment interest consistent with 28 U.S.C. § 1961.

4) The Embassy shall file its motion for attorneys' fees and expenses related to the Judgment against ECU Associates, P.C. no later than June 5, 2013.

A separate Order and Judgment shall be entered consistent with this Opinion.

**SO ORDERED.**

May 22, 2013

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE