## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EMBASSY OF THE FEDERAL REPUBLIC OF NIGERIA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**EPHRAIM EMEKA UGWUONYE,** *et al.,*<br><br>**Defendants.** | **Civil Action No. 10-cv-1929 (BJR)**<br><br>**MEMORANDUM OPINION ENTERING DEFAULT JUDGMENT AGAINST EPHRAIM EMEKA UGWUONYE** |

This matter is before the Court on a motion for default judgment brought by Plaintiff, the Embassy of the Federal Republic of Nigeria (hereinafter "the Embassy"), against Defendant Ephraim Emeka Ugwuonye. *See* Mot. for Default Judgment Against Defendant Ephraim Emeka Ugwuonye (Dkt. #139) (hereinafter "Mot.").[1] On May 20, 2013, this Court granted a motion for an entry of default against Defendant Ugwuonye stemming from his egregious discovery misconduct throughout this case. *See* May 20, 2012 Order on Motion to Show Cause and for Sanctions Against Defendant Ugwuonye (Dkt. #131).[2] The Embassy has now filed its motion for default judgment setting forth its requested damages.

## I.      BACKGROUND

While the fact underlying this case are relatively simply, the tortured procedural background consists of a consistent pattern of missed deadlines, extensions granted by the Court, and repeated failures to respond, all stemming from Defendant Ugwuonye's seeming disregard for the time of this Court and the other parties.

---

[1]    Defendant Ugwuonye filed a motion to stay the case on July 12, 2012. *See* Motion to Stay (Dkt. #149).  That motion will be addressed below.

[2]    The Clerk of Court entered the default on May 21, 2013.  *See* Clerk's Entry of Default as to Ephraim Emeka Ugwuonye (Dkt. #133).

### A.    The Underlying Tax Refund

This lawsuit concerns claims by the Embassy against Ugwuonye for breach of contract, breach of the implied covenant of good faith, breach of fiduciary duty, conversion, and unjust enrichment.  Am. Compl. (Dkt. #33) ¶¶ 52-110. [3]  Defendant Ugwuonye acted as legal counsel for the Embassy in several real estate transactions, including the sale of a property belonging to the Embassy that was located at 2201 M Street NW in Washington, DC (hereinafter "the property").  Am. Compl. (Dkt. #33) ¶¶ 3, 12; Answer (Dkt. #44) ¶¶ 3, 12.  The Embassy agreed to pay Defendant Ugwuonye and his law firm, ECU Associates, P.C. (hereinafter "ECU Associates"), the equivalent of 3.5% of the sale price of the property as complete payment for their legal services in connection with the sale of the property.  Am. Compl. ¶ 13; Answer ¶ 13. [4]  Defendant Ugwuonye has admitted that the Embassy paid him in full for those services.  Answer ¶ 15.

When Defendant Ugwuonye failed to file the necessary paperwork exempting a foreign sovereign from property taxes, the Internal Revenue Service ("IRS") withheld property taxes in the amount of $1.55 million upon the sale of the property.  Am. Compl. ¶ 17.  The Embassy retained Defendant Ugwuonye and ECU Associates to file the necessary paperwork with the IRS and obtain a refund of the $1.55 million tax lien, and to deliver the tax refund to the Embassy.

---

[3]   The Embassy also seeks that a constructive trust be placed on funds equal to the amount that Defendants wrongfully retained, and that a declaratory judgment be entered, including a declaration that the Embassy is entitled to the tax refund of $1.55 million, plus interest, and a declaration that Defendants are not entitled to withhold the tax refund from the Embassy for any reason.  Am. Compl. ¶¶ 111-126.  As the Embassy has not explained any further what is meant by a "constructive trust," the Court will not grant that particular relief.  The Court will enter the requested declaratory judgment.

[4]   Defendant Ugwuonye has indicated that he is the founder and President of co-Defendant ECU Associates.  *See* Defendants' Mot. to Dismiss or in the Alternative, Mot. for Summary Judgment, Affidavit of Ephraim Emeka Ugwuonye (Dkt. #76-1) ¶ 1.  This Court entered a default judgment against ECU Associates on May 22, 2013, for failure to appear in this case.  *See* May 22, 2013 Order (Dkt. #134); Judgment in a Civil Action (Dkt. #136).

Am. Compl. ¶ 18; Answer ¶ 18.  Defendant Ugwuonye admits that, on November 20, 2007, he received the $1.55 million refund from the IRS, and deposited the funds into an account in the name of ECU Associates.  Answer ¶ 19.

The Embassy claims that, in December 2007, Ugwuonye withdrew $550,000 in funds from the account without explanation.  Am. Compl. ¶ 19.  The Embassy further asserts that Ugwuonye has continued to withdraw funds from the accounts periodically, and that, as of May 2008, the account balance was $195.65.  Am. Compl. ¶¶ 22-23.  Defendant Ugwuonye admits that he has not returned the Embassy's $1.55 million tax refund.  Answer ¶ 40; Am. Compl. ¶ 40.

On November 9, 2010, the Embassy filed its Complaint in this action.  *See* Dkt. #1.  The Complaint was served upon Defendant Ugwuonye in his personal capacity (Dkt. #2) and as a "partner" [*sic*] in ECU Associates, P.C. (Dkt. #5).  The Embassy filed its Amended Complaint on June 30, 2011, and Defendant Ugwuonye, together with Defendant ECU Associates, responded with his Answer and Counterclaim on August 25, 2011.  *See* Dkt. #33; Dkt. #44.

### B.      The Embassy's Motion to Dismiss the Defendants' Counterclaim

On September 28, 2011, the Embassy filed a motion to dismiss the Counterclaim filed by Defendant Ugwuonye and ECU Associates.  *See* Mot. to Dismiss (Dkt. #43). [5]  On October 8, 2011, Defendant Ugwuonye's original counsel in this matter, Donald M. Temple, filed a motion to withdraw as Ugwuonye's attorney.  *See* Consent Motion to Withdraw as Attorney (Dkt. #45). Judge Henry Kennedy, who presided in this case originally, retired; the case was reassigned to the undersigned judge on April 3, 2012.  *See* Dkt. #47.  The Court granted Mr. Temple's motion

---

[5]     The Answer and Counterclaim were attached as proposed filings to a motion for leave to file out of time.  The motion was granted, and the documents were placed on the docket on October 6, 2011. *See* Dkt. #44.  The Embassy filed its motion to dismiss the Counterclaim before the Answer was docketed.

to withdraw on April 19, 2012, and Defendant Ugwuonye has appeared *pro se* since that time. *See* Apr. 19, 2012 Minute Order.

As Defendant Ugwuonye had never responded to the Embassy's motion to dismiss his Counterclaim, on April 19, 2012, the Court granted the Embassy's motion to dismiss the Counterclaim as conceded. *See* Apr. 19, 2012 Minute Order. On May 17, 2012, Defendant Ugwuonye filed a motion for reconsideration of the Court's dismissal of Defendants' Counterclaim. *See* Mot. for Reconsideration (Dkt. #60).

On June 25, 2012, Defendant Ugwuonye and counsel for the Embassy appeared before this Court for a Status Hearing. *See* June 25 Tr. 2:7-12 (Dkt. #94). At that conference, Defendant Ugwuonye requested that the Court stay the case in light of three criminal cases filed against him by the Nigerian government, which he explained required his attention and his presence in Nigeria. *Id.* 10:7-16. Defendant Ugwuonye further explained that, for at least part of the time the Embassy's motion was pending, he was arrested and detained in a Nigerian jail for 90 days under charges related to the facts in this case. *Id.* 12:1-9. The Court denied his request for a stay, noting that Defendant Ugwuonye had been active in other cases during the period in which he failed to respond to the Embassy's motion to dismiss, and, thus, clearly had the ability to file documents electronically during that time. *Id.* 10:18-11:4. Following the status conference, the Court granted Ugwuonye's motion for reconsideration and allowed him to file an opposition to the Embassy's motion to dismiss the Counterclaim, setting a deadline of July 10, 2012. Order of June 26, 2012 (Dkt. #70). The Court also ordered the Embassy to make inquiries of the Nigerian government in the event that Defendant Ugwuonye missed future deadlines to determine whether Defendant Ugwuonye was being detained, and to notify the Court accordingly. *Id.* at 1.

Defendant Ugwuonye filed his opposition to the Embassy's motion to dismiss his Counterclaim on July 11, 2012.  On November 5, 2012, the Court entered an Order denying the motion as to Defendant Ugwuonye, finding that Ugwuonye had satisfied the pleading requirements.  *See* Nov. 5, 2012 Order (Dkt. #98); Nov. 5, 2012 Mem. Op. (Dkt. #99) at 8-11.[6]

### C.   Defendant Ugwuonye's Motion to Dismiss Other Defendants

On July 27, 2012, Defendant Ugwuonye filed a motion to dismiss co-Defendants ECU Associates and ECU Law Group from the case, claiming that they were not capable of being sued under Federal Rule of Civil Procedure 17(b).  *See* Mot. to Dismiss (Dkt. #76) at 1-2.  On August 13, 2012, the Embassy filed its opposition to Defendant Ugwunoye's motion to dismiss, along with a cross-motion for entry of default against ECU Associates and ECU Law Group. *See* Cross-Mot. for Default (Dkt. #78).  Defendant Ugwuonye's opposition to the Embassy's cross-motion for default was due on August 30, 2012, but no opposition was filed by that date. *See* LCvR 7(b); Fed. R. Civ. P. 6(d).

On September 10, 2012, the Embassy filed a notice alerting the Court to Defendant Ugwuonye's failure to file an opposition to its cross-motion for default.  *See* Notice (Dkt. #80). Defendant Ugwuonye filed a motion requesting leave to file an opposition to the cross-motion on September 12, 2012.  *See* Mot. for Leave to File (Dkt. #81).  On September 14, 2012, the Embassy filed its opposition to Defendant Ugwuonye's motion for leave to file, triggering a deadline of September 24. 2012 for Ugwuonye's reply.  *See* Opp. to Motion for Leave (Dkt. #82); LCvR 7(d); Fed. R. Civ. P. 6(d).  No reply in support of Ugwuonye's motion for leave to file an opposition to the Embassy's cross-motion was filed by that date.  On September 25, 2012, the Embassy filed a notice alerting the Court to Defendant Ugwuonye's failure to file a reply.

---

[6]   As the opposition to the motion to dismiss the Counterclaim was filed solely by Defendant Ugwuonye, and ECU Associates did not file any opposition (nor did Defendant Ugwuonye attempt to represent that he was filing on ECU Associates' behalf), the motion was granted as to ECU Associates.  *See* Nov. 5, 2012 Order.

*See* Notice (Dkt. #84).  On September 26, 2012, Defendant Ugwuonye filed his reply in support of his motion for leave to file his opposition to the Embassy's cross-motion, without seeking leave to file the reply itself out of time.  *See* Reply (Dkt. #86).  The Embassy filed a motion to strike the reply in support of the motion for leave to file.  *See* Mot. to Strike Reply (Dkt. #89).

On November 2, 2012, the Court entered an Order that denied Defendant Ugwuonye's motion to dismiss co-Defendants ECU Associates and ECU Law Group, deferred the Embassy's motion for default against ECU Associates, and denied the Embassy's motion for default against ECU Law Group.  *See* Nov. 2, 2012 Order (Dkt. #95).[7]  The Court further ordered Defendant ECU Associates to obtain counsel within fourteen days of the Order, noting that failure to obtain counsel would result in the entry of a default against the firm.  *Id.*

### D.    The Embassy's Motion to Compel Discovery Responses

On September 7, 2012, the Embassy filed a motion to compel discovery responses from Defendant Ugwuonye, requesting that the Court order Ugwuonye to produce documents and responses to interrogatories served on him by the Embassy on July 13, 2012.  *See* Mot. to Compel (Dkt. #79) at 1.  The Embassy also requested that sanctions in the form of reasonable attorneys' fees and costs incurred in bringing the motion to compel be levied against Defendant Ugwuonye.  *Id.*

On September 25, 2012, the Embassy filed a notice alerting the Court to Defendant Ugwuonye's failure to oppose its motion to compel.  *See* Notice (Dkt. #83).  The same day, Defendant Ugwuonye filed  his opposition to the motion to compel, followed by a motion for leave to file his opposition to the motion to compel out of time.  *See* Opp. to Mot. to Compel

---

[7]    The Court deferred ruling on the motion for default against ECU Associates to provide the opportunity for the firm to obtain new counsel, having clarified that it was an entity capable of being sued under Federal Rule of Civil Procedure 17(b).  Nov. 2, 2012 Mem. Op. (Dkt. #96) at 12.  The Court denied the motion as to ECU Law Group because it was unclear whether ECU Law Group was a partnership capable of being sued under Rule 17.  *Id.* at 13.

(Dkt. #85); Mot. for Leave to File (Dkt. #87).  The Embassy filed a motion to strike the opposition to the motion to compel.  *See* Mot. to Strike Opp. (Dkt. #88).

On October 17, 2012, the Court granted Defendant Ugwuonye's motion to file his opposition out of time, and denied the Embassy's motion to strike the opposition, citing the necessity to provide Ugwuonye with the opportunity to respond.  *See* Oct. 17, 2012 Order (Dkt. #91) at 2-3.  Having reviewed the opposition, the Court determined that there was no good cause for Defendant Ugwuonye's failure to comply with discovery.  *Id.* at 4.  As the opposition provided Defendant Ugwuonye with the opportunity to respond, the Court had no reservations as to imposing the sanctions against him.  *Id.*  The Court granted the Embassy's motion to compel and granted costs and attorneys' fees associated with filing the motion to compel as sanctions. *Id.* at 1.

On May 14, 2013, the Court entered an Order resolving the Embassy's Bill of Costs on the motion to compel, and ordered Defendant Ugwuonye to reimburse the Embassy a total of $1,286.25.  *See* Order on Plaintiff's Bill of Costs (Dkt. #130) at 5.  Those costs have never been paid.  *See* Mot. at 1.  Furthermore, Defendant Ugwunoye has never complied with the Order compelling discovery, which has required the Embassy to issue a number of non-party subpoenas in its quest for discovery.  *See, e.g.,* Dkt. ## 114, 118, 119, 120, 121; *see also* Bill of Costs (Dkt. #140) at 4.

### E.      Default Judgment Against ECU Associates

On November 5, Defendant Ugwuonye filed a motion for extension of time to comply with the Court's various Orders entered since October 8, 2012, explaining that he had been in Nigeria for his criminal cases, and unable to comply during that time.  *See* Mot. for Extension of Time (Dkt. #97) at 1-4.  On November 16, 2012, the Court granted Defendant Ugwuonye's motion in part, and ordered him to comply by November 30, 2012.  *See* Nov. 16, 2012 Order

(Dkt. #103).  On November 30, Defendant Ugwuonye filed a motion seeking until December 8, 2012 to comply.  *See* Mot. for Extension of Time (Dkt. #105).  The Court granted the extension, but noted that no further extensions would be granted.  *See* Dec. 3, 2012 Minute Order.

On December 10, 2012, Defendant Ugwuonye entered an appearance as counsel for ECU Associates.  S*ee* Notice of Appearance (Dkt. #108).  The Embassy filed a motion to disqualify Defendant Ugwuonye as counsel for ECU Associates, citing his suspension from the practice of law in the District of Columbia and the adversarial interests between the Defendants.  *See* Mot. to Disqualify (Dkt. #110) at 2.  Defendant Ugwuonye, on behalf of ECU Associates, filed a motion for leave to file a memorandum in opposition out of time, which the Court granted.  *See* Mot. for Leave to File (Dkt. #113); Feb. 13, 2013 Minute Order.  However, Defendant Ugwuonye failed to file an opposition, and the Court granted the Embassy's motion to disqualify Ugwuonye as counsel for ECU Associates.  *See* Feb. 22, 2013 Order (Dkt. #115).  The Court again ordered ECU Associates to obtain counsel.  *Id.*

As counsel for ECU Associates was never obtained, the Court granted the Embassy's motion to enter default against ECU Associates, followed by granting the Embassy's motion for default judgment against ECU Associates.  *See* Apr. 23, 2013 Order (Dkt. #125) (granting entry of default); May 22, 2013 Order (Dkt. #134) (granting entry of default judgment).

**F.  Entry of Default Against Defendant Ugwuonye and the Motion for Default Judgment**

On March 11, 2013, the Embassy filed a motion to show cause and for sanctions against Defendant Ugwuonye, including entry of default, citing Ugwuonye's substantial discovery misconduct since this Court's Order compelling discovery.  *See* Mot. to Show Cause and for Sanctions (Dkt. #117).  Defendant Ugwuonye did not file an opposition, which would have been due on March 28, 2013.  *See* LCvR 7(b); Fed. R. Civ. P. 6(d).

8

On April 12, 2013, the Embassy filed a supplemental memorandum in further support of its motion to show cause and for sanctions, asserting that Defendant Ugwonye failed to appear for a deposition noticed by the Embassy for April 11, 2013.  *See* Supp. Mem. (Dkt. #122) at 1. Defendant Ugwuonye did not object to the timing or location of the deposition, and did not contact the Embassy's counsel at any point to suggest rescheduling the deposition.  *Id.* at 2. Nonetheless, the Embassy's counsel waited for an hour for Defendant Ugwuonye, but he never appeared.  *Id.*, Exh. B (final transcript of deposition).

The Court granted the Embassy's motion to show cause and for sanctions, and determined that entry of default was an appropriate sanction in light of the severity of Defendant Ugwuonye's failure to comply with his discovery obligations, the significant prejudice to the Embassy's case as a result of his actions, and his failure to comply with the discovery Orders of the Court.  *See* May 20, 2013 Mem. Op. (Dkt. #132) at 6-10.  The Court further set a hearing on damages in connection with the motion for default judgment.  *See* May 20, 2013 Order.

From February 7, 2013, until June 10, 2013, Defendant Ugwuonye was essentially silent in this case.  Then, on June 10, he e-mailed Courtroom Deputy Chashawn White concerning his presence in Nigeria since the end of April.  *See* Letter (E-mail) (Dkt. #141).  Ugwuonye claimed that he had been prevented from leaving Nigeria by authorities in that country, and that he had been unable to access the Court's electronic filing system.  *Id.*  The Court noted, however, that Defendant Ugwuonye filed a Notice of Appeal on behalf of ECU Associates before the D.C. Circuit on May 23, 2013.  *See* Jun. 14, 2013 Order at 1 n.1.  Nonetheless, the Court ruled that Ugwuonye's e-mail to Ms. White would be considered an opposition to the Embassy's motion, as well as a motion for reconsideration of the Court's entry of default against him, such that the Embassy's motion would not be considered to have been conceded.  *Id.* at 1.  The Embassy filed its response on June 24, indicating that Defendant Ugwuonye's claims that he had been detained

for any length of time by Nigerian authorities were false, as was his claim that he lacked access to electronic filing, pointing to multiple articles posted on the Internet by Ugwuonye in recent weeks. *See* Reply (Dkt. #145) at 4-10.[8]

Defendant Ugwuonye filed no other documents until July 12, 2013, the day of the damages hearing. At 3:22 A.M. EDT, Defendant Ugwuonye filed a motion to stay the case pending a status conference in 90 days. *See* Mot. to Stay (Dkt. #149) (electronic filing receipt). Defendant Ugwuonye did not appear for the scheduled hearing. The Court proceeded with the hearing on July 12, 2013. *See* Jul. 12, 2013 Minute Entry.

## II.     LEGAL STANDARD

As discussed in this Court's May 20, 2013 Memorandum Opinion, default has been entered against Defendant Ugwuonye as a sanction for his complete failure to provide discovery in this case, his failure to appear at his deposition, and his disregard of the Court's Order compelling discovery, pursuant to Federal Rules of Civil Procedure 37(b) and 37(d). *See* May 20, 2013 Mem. Op. at 4-10. The default proceeds in accordance with Federal Rule of Civil Procedure 55. Obtaining a default judgment under Rule 55 is a two-step process. Once default has been entered, the first step, the plaintiff may move for default judgment. Fed. R. Civ. P. 55(b).

While default establishes the defaulting party's liability for the well-pleaded allegations of the complaint, it does not establish the amount of damages for which a defendant is liable. *Flynn,* 741 F. Supp. 2d at 269-70. Unless a plaintiff's claim can be made certain by computation, as evidenced by an affidavit showing the amount due, the plaintiff seeking a default

---

[8]     The Embassy pointed to the only incident that could be considered "detention" of Defendant Ugwuonye since 2011, which consisted, according to an Internet article signed by Ugwuonye, of his being held at the Lagos airport for one and a half hours on March 2, 2013. *See* Reply at 5-6; Reply, Exh. B at 2.

judgment must apply to the Court. Fed. R. Civ. P. 55(b). A court may conduct a hearing, but is not required to do so if it ensures that there is a basis for the damages specified in the default judgment. *Flynn*, 741 F. Supp. 2d at 270 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). If a default judgment is sought against a defendant who has appeared personally or by a representative, that defendant or its representative must be served with written notice of the application at least seven days before any hearing on damages. Fed. R. Civ. P. 55(b)(2).

## III.  ANALYSIS

Defendant Ugwuonye was provided with written notice of the Embassy's motion and the scheduled hearing at least seven days before the hearing on damages. *See* May 20, 2013 Order (receipt). Defendant Ugwuonye did not appear at the hearing, but chose to file an untimely motion to stay the case only six hours prior to the scheduled hearing. Relying on the Declaration of Nigerian Ambassador Adebowale Ibidapo Adefuye, which was submitted in support of the Embassy's motion, the Court finds that there is a clear basis for the damages that will be awarded to the Embassy.

### A.  Defendant Ugwuonye's Motion to Stay

The Court will first address Defendant Ugwuonye's motion to stay the case. Ugwuonye requests that the Court order a stay of all proceedings pending a status conference in 90 days. Mot. to Stay at 1. He asserts that he has had to be in Nigeria most of the time as a result of the criminal trials against him. *Id.* at 1-2. He claims that he could not participate in discovery effectively, and that the Embassy has lied and attempted to prevent him from properly participating in these proceedings, although he does not specifically allege what "lies" the Embassy may have presented to the Court. *Id.* at 2. Defendant Ugwuonye relies on documents authorizing his detention for the criminal charges stemming from the same facts at issue in this

case, but those documents date from 2011. *Id.* As discussed above, the Court has already addressed Ugwuonye's 2011 detention at an earlier stage of this case; however, he provides no evidence to show that he has been detained since that time. He asserts that he has been placed on a watch list, and that the Nigerian Economic and Financial Crimes Commission and the Ambassador of Nigeria could deny him the right to travel out of Nigeria at any time; he does not, however, claim or provide any evidence that they have done so. *See id.*, Decl. of Ugwuonye ¶ 3(d).

In short, Defendant Ugwuonye has provided no evidence that would compel this Court to stay the case. Furthermore, his delay in filing his motion to stay, along with his failure even to attempt to appear at the damages hearing, underscores the disregard he has shown throughout this case for the time and resources of this Court. Therefore, Defendant Ugwuonye's motion to stay the case is denied.

**B.      The Embassy's Motion for Default Judgment**

Defendant Ugwuonye's June 10, 2013 e-mail failed to adequately support his contention that this Court should not enter a default judgment against him in light of his complete failure to comply with this Court's discovery orders. Therefore, the Court grants the Embassy's motion to enter default judgment, and awards damages and fees as follows:[9]

*1.      Compensatory Damages*

The Embassy requests compensatory damages in the amount of $1.55 million. "Compensatory damages make plaintiffs whole for the harms that they have suffered as a result of defendants' actions." *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996) (citing Restatement (Second) of Torts § 903, cmt. a (1977)).

---

[9]      As the Court also designated Defendant Ugwuonye's June 10 e-mail to comprise a motion for reconsideration of the entry of default, *see infra*, that motion is denied for the same reasons.

The following are the facts as presented by the Embassy, and as found by the Court:  The Embassy engaged Defendant Ugwuonye to obtain a refund from the IRS of $1.55 million. *See* Decl. of Ambassador Adebowale Ibidapo Adefuye (Dkt. #139-1) (hereinafter "Decl.") ¶ 8 and Attachment ("Att.") 1.  On November 16, 2007, the IRS issued a refund check in the amount of $1.55 million to the "Embassy of Nigeria c/o ECU Associates, PC."  *Id.* ¶ 9 and Att. 2. Defendant Ugwuonye did not deliver the funds to the Embassy.  *Id.* ¶ 13.  On December 12, 2007, Defendant Ugwuonye misrepresented in a letter to the Embassy that the funds had not yet cleared, and that he would deliver the funds after they cleared, which he stated he expected to be by December 22, 2007.  *Id.* ¶ 12 and Att. 4.  In the year following the initial deposit, Defendant Ugwuonye made twenty-two withdrawals from the ECU Associates account containing the tax refund.  *Id.* ¶ 14 and Att. 3.

On August 5, 2008, the Embassy wrote to Defendant Ugwuonye, once again demanding the tax refund, and citing Ugwuonye's December 12, 2007 letter.  *Id.* ¶ 17 and Att. 5.  On August 12, 2008, Defendant Ugwuonye responded to the Embassy's August 5 letter, though attorney Bruce Fein.[10]  *Id.* ¶ 18 and Att. 6.  The letter asserted that Fein represented Ugwuonye in the matter of legal fees for certain litigation in the Northern District of Illinois, and claimed that Ugwuonye has informed the Nigerian government that he would use the tax refund to pay past due legal fees, "as was his right under routine contract law."  *Id.* and Att. 6 at 2.  The Embassy asserts that it requested documentation supporting Defendant Ugwuonye's claim that he was entitled to the funds, but none was ever provided.  *Id.* ¶ 19 and Atts. 7-8.

As the Court has determined that Defendant Ugwuonye is liable on all counts, it is appropriate for the Court to order Ugwuonye to pay compensatory damages equal to the

---

[10]   Fein is a co-Defendant in this case.

pecuniary harm the Embassy suffered as a result of his actions.  Therefore, the Court will award compensatory damages in the amount of $1.55 million.

### C.      Prejudgment Interest

The Embassy requests prejudgment interest on the $1.55 million owed to it by Defendant Ugwuonye, accruing as of November 20, 2007, the date on which Defendant Ugwuonye deposited the funds into the ECU Associates account.  *See* Decl. ¶ 10 and Att. 3; *see also* Answer ¶ 19.  The Embassy proposes that interest be calculated at a statutory rate of 6% per annum, or $254.79 per day, from November 20, 2007 until the date this Court enters a default judgment against ECU Associates.

As a general matter, "[p]rejudgment interest serves to compensate for the loss of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'"  *West Virginia v. United States*, 479 U.S. 305, 310-11 n.2 (1987).  A federal court sitting in diversity must look to local law to determine whether prejudgment interest is available.  *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 855 (D.C. Cir. 1981).  In the District of Columbia, an injured party in an action sounding in tort may recover prejudgment interest "to the extent that it will make the injured party whole."  *Duggan v. Keto*, 554 A.2d 1126, 1140 (D.C. 1989); *see also* D.C. Code § 15-109 (2012).  Where a plaintiff has been deprived of the use of money that has been withheld, prejudgment interest "is an element of complete compensation for the loss of use of such money."  *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1253 (D.C. 1990).

Under this Court's entry of default, Defendant Ugwuonye is liable for the Embassy's tort claims of conversion and unjust enrichment.  The Embassy has been deprived of the $1.55 million for five and a half years, a substantial amount of money which could have, according to the Embassy, been used "to promote Nigeria interests in the United States, maintain the

Embassy's building and facilities, pay the salaries of the Nigerian and U.S. citizens who work in

its Embassy, or support its operations or other needs."  Decl. ¶ 22.  Prejudgment interest is

necessary to fully compensate the Embassy for the losses it has suffered as a result of Defendant

Ugwuonye's misconduct.  Therefore, the Embassy is entitled to prejudgment interest.[11]

As there is no contractually-specified rate of interest to apply to the debt, the Embassy is

entitled to the statutory rate of 6% per annum provided by D.C. Code § 28-3302(a).  *See Pierce

Assocs.*, 527 A.2d at 310.  Therefore, the Embassy is awarded prejudgment interest at the rate of

6% per annum, or $254.79 per day, commencing on November 20, 2007, the date that the tax

refund was deposited by Defendant Ugwuonye into the ECU Associates account.  *See* Decl. ¶ 10

and Att. 3; *see also* Answer ¶ 19.  As of today, July 24, 2013, that amount is $528,179.67.

### D.    Post-Judgment Interest

The Embassy requests post-judgment interest from the date of this judgment until the

judgment is paid in accordance with 28 U.S.C. § 1961.  Section 1961 provides that "[i]nterest

shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C.

§ 1961(a).  Therefore, post-judgment interest is awarded in this case, to be calculated according

to the rate set forth in 28 U.S.C. § 1961.

### E.    Punitive Damages

The Embassy requests punitive damages in the amount of two times the compensatory

damages.  Mot. for Default Judgment as to Defendant Ugwuonye at 8.  Under District of

---

[11]    The Court would reach the same conclusion under the Embassy's contract claims, as the $1.55
million is a liquidated debt upon which interest should be payable under usual circumstances.  *See*
D.C. Code § 15-108 (mandating prejudgment interest be paid on liquidated debts upon which interest
is payable by "usage"); *Riggs*, 581 A.2d at 1254-55 (defining a "liquidated debt" as one that "at the
time it arose . . . was an easily ascertainable sum certain" and "usage" as "what is customary or usual
under similar or comparable circumstances.") (citations omitted); *see also District of Columbia v.
Pierce Assocs., Inc.*, 527 A.2d 306, 312 (D.C. 1987) (awarding prejudgment interest under Section
15-108 for a liquidated debt in a breach of contract case).

Columbia law,[12] punitive damages are normally only available in actions arising from intentional torts. *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 108 (D.D.C. 2004). "The basic purpose of punitive damages is to deter and punish." *Id.* To recover punitive damages on an intentional tort, a plaintiff must establish that the tortious act was committed with "an evil motive, actual malice, deliberate violence or oppression" or in support of "outrageous conduct in willful disregard of another's rights." *Id.* (quoting *Robinson v.* Sarisky, 535 A.2d 901, 906 (D.C. 1988) (internal citations omitted)). Punitive damages are generally not recoverable in the District of Columbia for breach of contract, except "in certain narrowly defined circumstances, where breach of contract merges with, and assumes the character of, a willful tort." *Id.* (quoting *Den v. Den*, 222 A.2d 647, 648 (D.C. 1966)).

The Embassy also requested punitive damages in its motion for default judgment against ECU Associates, and the Court denied that request, citing the posture of the default case against ECU Associates. *See* May 22, 2013 Mem. Op. (Dkt. #135) at 9. In its motion for default judgment against Defendant Ugwuonye, the Embassy contends that Defendant Ugwuonye's conduct has been so egregious and so utterly beyond the pale as to allow the Court to find an "evil motive" and the "actual malice" necessary to award punitive damages. In particular, the Embassy points to Defendant Ugwuonye's breach of his fiduciary duty to the Embassy and his overall ethical obligations as an attorney. *See* Mot. at 10.

The Embassy's arguments as to why Defendant Ugwuonye's behavior justifies an award of punitive damages have weight. The Court finds particularly egregious the fact that Defendant

---

[12]  This Court has previously determined that District of Columbia law is applicable to the Embassy's breach of contract claim. *See* Mem. Op. Granting in Part and Denying in Part Mot. to Dismiss Counterclaim (Dkt. #99) at 10. As to the tort claims, as the Embassy assumes that District of Columbia law governs those claims, ECU Associates does not contest that assumption, and that assumption appears to be consistent with the District of Columbia's choice of law rules, the Court will apply District of Columbia law to the Embassy's tort claims as well. *See Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 248 n.15 (D.D.C. 2011)

Ugwuonye claimed that the funds were forthcoming, when he had deposited them into the ECU

Associates account on November 20.  *See* Decl. ¶ 12 and Att. 4.

That said, given the default posture of this case, the Court will not award punitive

damages.  The Court does not have before it the evidence necessary to make a finding that

Defendant Ugwuonye acted with the requisite malicious intent.   Therefore, the Embassy's

request for punitive damages will be denied.

F.      **Attorneys' Fees**

In addition to granting the entry of default as a sanction against Defendant Ugwuonye,

the Court also granted the Embassy an award of reasonable expenses, including attorneys' fees,

pursuant to Federal Rules of Civil Procedure 37(b) and 37(d).  *See* May 22, 2013 Mem. Op. at

10.  More particularly, the Court granted those costs and fees related to Defendant Ugwuonye's

failure to engage in the discovery process in any way since the Embassy's first motion to

compel, including his failure to appear at his scheduled deposition and his failure to comply with

this Court's order compelling discovery, necessitating additional motions practice by the

Embassy and, ultimately, extensive third-party discovery.  On May 28, 2012, the Embassy

submitted its Bill of Costs, requesting attorneys' fees and expenses totaling $134,219.50.  *See*

Bill of Costs (Dkt. #140) at 1.  Having reviewed the Embassy's submission, the Court will award

attorneys' fees and expenses, with reductions.

The initial estimate for attorneys' fees is calculated by multiplying the number of hours

reasonably expended on the motion times a reasonable hourly rate.  *See D.L. v. District of

Columbia*, 256 F.R.D. 239, 242 (D.D.C. 2009).  A strong presumption exists that the product of

these two variables—the "lodestar figure"—represents a reasonable fee.  *Id.* at 242.

*1.      Reasonable Rate*

"A reasonable billing rate for an attorney is one that is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 12 (D.D.C. 2009) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  In determining whether a rate is reasonable, courts in this district frequently rely upon the *Laffey* matrix, a methodology for calculating the prevailing market rate for attorneys' fees in the Washington, D.C. community. *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 683 F. Supp. 2d 1, 14 n.8 (D.D.C. 2010).  The *Laffey* matrix was devised by the D.C. Circuit in *Laffey v. Northwest Airlines*, 241 F.2d 4 (D.C. Cir. 1984), and is updated and maintained by the Civil Division of the United States Attorney's Office for the District of Columbia.  *See Laffey* Matrix – 2003-2013, http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf (last visited July 19, 2013).

The Embassy urges the Court, however, to use a second, slightly different version of the *Laffey* matrix.  The version maintained by the United States Attorney's Office ("USAO") calculates the matrix rate for each year by adding the change in the overall cost of living, as reflected in the United States Consumer Price Index ("CPI") for the Washington, D.C. area for the prior year, and rounding that rate to the nearest multiple of $5.  *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006).  The version proposed by the Embassy, however, calculates the matrix rates for each year by using "the legal services component of the CPI rather than the general CPI on which the U.S. Attorney's Office Matrix is based."  *Id.*  As a result of the different methods of calculation, while the version maintained by the USAO provides for a top hourly rate of $505, the "updated" version provides for a top rate of $753.  *Compare Laffey* Matrix – 2003-2013, http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf

(last visited July 19, 2013), *with Laffey* Matrix, http://www.laffeymatrix.com/see.html (last visited July 19, 2013).

Having reviewed the supporting documentation and the case law, the Court is not convinced that deviation from the USAO matrix is appropriate. While this case has no doubt been very frustrating at times, it has not been particularly complex, either in the issues raised or in its procedural posture. There has been no trial, and many of the Embassy's motions— including the instant motion for default judgment—have been unopposed. Therefore, the Court will calculate attorneys' fees according to the USAO matrix rates.

Having established the appropriate guide for attorney rates, a party seeking fees has the burden of justifying the rates at which individuals billed. *Role Models v. Brownlee*, 353 F.3d 962, 969-70 (D.C. Cir. 2004). The Embassy has submitted a Declaration by Embassy counsel T. Michael Guiffré attesting to the skills, experience, and reputation of each attorney and paralegal who has worked on matters that are within the scope of the Court's award of attorneys' fees pursuant to Rules 37(b) and 37(d). *See* Bill of Costs, Decl. ¶¶ 3-12. He asserts that he has engaged in the practice of law for 20 years. *Id.* ¶¶ 6-10. He asserts that associate Brendan Gallagher, who has been "fundamentally involved" in this litigation, has been in the practice of law for slightly over one year. *Id.* ¶ 11. Finally, he asserts that Theresa Morgan, a senior paralegal with over fifteen years of experience, has worked on the matters at hand. *Id.* ¶ 12.

Applying their respective levels of experience to the USAO *Laffey* matrix, the Court determines that Mr. Guiffré is entitled to the top rate of $505 per hour. The Court further finds that Mr. Gallagher is entitled to the rate for an attorney with 1-3 years of experience, $245 per hour. Finally, the Court finds that Ms. Morgan is entitled to the rate for paralegals, $145 per hour.

2.      *Reasonable Hours*

In the determination of whether the hours claimed are reasonable, the party seeking fees must provide detailed documentation that supports its request.  *Guantanamera*, 263 F.R.D. at 11. If, as here, the party prevailed on its entire motion, then the party may seek fees associated with the entire motion.  *Id.* at 12.

The Embassy's submitted documentation shows a total of 300.25 hours expended in connection with the substantial ramifications of Defendant Ugwuonye's failure to comply with this Court's discovery orders, including the necessity of third-party discovery, and with his failure to appear for his deposition.  *See* Bill of Costs, Decl. of Kerri L. Lawrence (Dkt. #140-2), Att. 1 at 10.  Of that total, 174.25 hours were expended by Brendan Gallagher, for total fees of $42,691.25; nine hours were expended by Theresa Morgan, for total fees of $1,305.00; and 117 hours were expended by T. Michael Guiffré, for total fees of $59,085.00.  The Court finds that these total hours are reasonable, and will award fees in the amount of $103,081.25.

3.      *Reasonable Costs*

The Embassy requests costs and expenses in the amount of $636.75 for the reporting, transcription, and videographer fees associated with Defendant Ugwuonye's deposition, and $2,520.25 for process server fees incurred in serving subpoenas *duces tecum* on third parties.  *Id.* Again, in light of the substantial work that had to be conducted by the Embassy's counsel in the face of Defendant Ugwuonye's failure to comply with the Court's discovery orders and failure to appear for his deposition, the Court finds that these total costs are reasonable, and will award the full requested costs of $3,157.00.

**IV.     CONCLUSION**

**THEREFORE**, in light of the foregoing, it is hereby **ORDERED**:

1)      Defendant Ugwuonye's motion to stay the case is **DENIED**;

2)      Defendant Ugwuonye's motion for reconsideration of the entry of default is **DENIED**;

3)      The Embassy's motion for default judgment against Defendant Ugwuonye is **GRANTED** as to compensatory damages, prejudgment interest, and post-judgment interest;

4)      The Embassy's motion is **DENIED** as to punitive damages;

5)      The Court enters a declaration that the Embassy is entitled to the tax refund of $1.55 million, plus interest;

6)      The Court finds that the Embassy is entitled to $1,550,000 in compensatory damages, $528,179.67 in prejudgment interest, and post-judgment interest consistent with 28 U.S.C. § 1961;

7)      The Embassy is entitled to $1,286.25 in attorneys' fees associated with filing its motion to compel, as consistent with this Court's May 14, 2013 Order resolving Plaintiff's Bill of Costs (Dkt. #130), which as yet remains unpaid; and

8)      The Embassy is entitled $103,081.25 in attorneys' fees and $3,157.00 in costs associated with Defendant Ugwuonye's failure to comply with this Court's discovery orders, including the resultant motions practice and third-party discovery, and his failure to appear at his April 11, 2013 deposition.

A separate Order and Judgment shall be entered consistent with this Opinion.

July 24, 2013

_Barbara J. Rothstein_

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE